## STATE v. B. H. HEDGECOCK.

### (Filed 18 April, 1923.)

**1. Indictment—False Entries—Fraud and Deceit—Banks—Criminal Law.**

. Where the indictment charges the employee with making false entries upon the books of the bank in which he was employed, and that it was a corporation existing under the laws of the State of North Carolina, it is not defective for failing to particularize that it was a bank, within the contemplation of the statute under which the indictment had been drawn.

**2. Same—Persons to Jurors Unknown—Statutes.**

An indictment charging the employee with the indictable offense of making a false entry on the books of a bank for which he was employed need not necessarily specify all those whom he has thereby intended to defraud; and where it has named the officers of the bank and a depositor, "and other persons to the jurors unknown," it is sufficient to show that the false entry was entered to deceive the bank examiners in concealing his defalcation, who were present making an examination of his books, both under the common law and the statute, C. S., 4621, 4677.

**3. Same—Counts—Verdict.**

Where the indictment charges but the one criminal offense of fraud to deceive "persons to the jurors unknown" in a false entry made by the defendant on the books of the bank and there is evidence upon the trial as to the identity of those "persons unknown" to the grand jury, finding a true bill, a general verdict of guilty will be sustained.

**4. Same—Bill of Particulars.**

Where a bank employee is charged with the indictable offense of making false entries upon the books of the bank in fraud or deceit of "other persons to the jurors unknown," the defendant should make his motion to the discretion of the trial judge for a bill of particulars requiring the name of these unknown persons, and his failure to do so will be deemed a waiver of his right. C. S., 4613.

**5. Common Law—Procedure—Technicalities—Statutes.**

The refined technicalities of the procedure at common law, in both civil and criminal cases, have most entirely, if not quite, been abolished by our statute. C. S., 4610-4625.

APPEAL by defendant from *Harding, J.,* at December Term, 1922, of GUILFORD.

The defendant was convicted at December Term, 1922, of Guilford of the statutory offense of "making false entries with intent to defraud" on the books of the Home Banking Company of High Point, and from the judgment he appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*W. P. Bynum, T. J. Gold, S. S. Alderman, and R. C. Strudwick for defendant.*

CLARK, C. J. The indictment in this case is as follows: "The jurors for the State, upon their oath present that B. H. Hedgecock (being cashier of the Home Banking Company), late of the county of Guilford, on 22 April, in the year of our Lord one thousand nine hundred and twenty-two, with force and arms, at and in the county aforesaid, did unlawfully, willfully, and feloniously make a false entry on the books of the Home Banking Company by charging the account of M. J. Wrenn with $10,000 on the savings ledger, thereby reducing his balance from $24,242.50 to $14,242.50, with the intent to unlawfully, willfully, and feloniously defraud and injure the Home Banking Company, a corporation incorporated under the laws of the State of North Carolina, and M. J. Wrenn and other persons whose names are to the jurors unknown, and to deceive certain officers and agents of the Home Banking Company and other persons to the jurors unknown. Against the form of the statute in such case made and provided, and against the peace and dignity of the State."

After the verdict of guilty, the defendant moved for an arrest of judgment upon the ground that the indictment is defective in that it fails to state, with certainty, the facts necessary to constitute the crime with which the defendant was charged. The motion was overruled. There were several exceptions to the evidence, but they do not require discussion. The only exception to the charge is as follows:

"Gentlemen of the jury, the court charges you if you find by the evidence in this case beyond a reasonable doubt that when the defendant made the entry on the savings account in the book of the Home Banking Company, which he admits, of $10,000, charging that to the account of M. J. Wrenn, after having admitted that, if you find, if the State has satisfied you beyond a reasonable doubt that that entry was false, and that at the time he made it you find it was false, and he did it with the intent to defraud and injure either the bank or Mr. Wrenn, or to deceive the officers of that bank, or to deceive the bank examiners who were there to examine the bank, if the State has satisfied you beyond a reasonable doubt of those facts, then it would be your duty to convict the defendant."

The defendant contends that the judgment should be arrested because

the indictment was fatally defective in that (1) it is not alleged that the Home Banking Company was at the time of the alleged offense or at any time had been a bank in the definition of a bank contained in the statute under which this indictment is drawn. But the indictment does allege that the Home Banking Company is a corporation incorporated under the laws of the State of North Carolina, and Laws 1921, ch. 4, sec. 81, forbids any person, association, etc., to so hold themselves out by advertising or otherwise unless they are such. The defendant had the fullest knowledge that the Home Banking Company at the time of the alleged offense was engaged in the banking business.

(2). The defendant further contends that the indictment is fatally defective because it is not alleged at the time of the alleged offense the Home Banking Company was engaged in the banking business; and further, that charging the making of a "false entry" by defendant without more appearing is not sufficient. The allegations in the indictment are of sufficient information to defendant within the most technical rules of the law.

The defendant in his argument here seemed to rest his case chiefly upon the ground that the court in the charge told the jury that "if the defendant made the entry on the savings account in the book of the Home Banking Company, which he admits, of $10,000, charging that to the account of M. J. Wrenn, after having admitted that, if you find, if the State has satisfied you beyond a reasonable doubt that that entry was false, and that at the time he made it you find it was false, and he did it with the intent to defraud and injure either the bank or Mr. Wrenn, or to deceive the officers of that bank, or to deceive the bank examiners who were there to examine the bank, if the State has satisfied you beyond a reasonable doubt of those facts, then it would be your duty to convict the defendant." The defendant contends that the use of the words in this charge "or to deceive the bank examiners who were there to examine the bank" was erroneous, because the defendant had no notice of indictment on this charge, but the language of the indictment, "and to deceive certain officers and agents of the Home Banking Company and other persons to the jurors unknown" was full notice to him in connection with other words in the indictment for the crime with which he was charged. The judge, in using the words the defendant objects to, "or to deceive the bank examiners who were there to examine the bank," was referring to the evidence which tended to prove defendant's intent to deceive certain officers and agents of the Home Banking Company and "other persons to the jurors unknown." He was not referring to the exact language of the indictment, but to the fact that the persons named, to wit: officers and agents of the banking company and bank examiners who were there to examine the bank, were intended to be deceived.

In other words, the defendant is attempting to escape liability for this offense of which he was duly convicted upon ample evidence upon the contention that the "bank examiners who were there to examine the bank" could not prove to any extent the charge that the false entry was made to deceive "persons to the jurors unknown," and that it was essential that such bank examiners should be named in the indictment.

In the highly technical common-law procedure, both criminal and civil, now almost entirely, if not altogether, abolished here, C. S., 4610-4625, especially secs. 4623, 4625—and, indeed, everywhere—there were many things to be charged in an indictment—besides, for instance, the cumbersome allegations in an indictment for murder that the defendant was "moved and instigated by the devil," and the depth and nature of the wound, and the value of the weapon, and that the party did languish, etc., etc. The reason given for many of these "refinements" was, first, that the defendant should have information; and second, there should be earmarks by which he should be protected from another indictment for the same offense, but neither of these reasons would apply as to the exception here made, for there is but one offense charged, and that is fully and specifically stated so that the defendant knew well of what he was charged, and the record itself sets it out and will prevent his being again indicted for the same offense.

In this case the State's evidence is that the discrepancy of a shortage in the bank was over $123,000, and the defendant admitted in his evidence and in writing "false entries" of nearly $80,000. This particular item of false charge whereby the credit of Wrenn was reduced by an alleged check of $10,000, the defendant, while admitting nearly $80,000 of false entries in order to make his books show up, denied this specific one upon the ground that there was such a check, but that he had lost it and he could not produce it. Wrenn and his wife testified that he had given no such check, and Swaim, bookkeeper of the bank, testified that he saw the defendant when he was charging up Wrenn's account with it, and told him Wrenn had made no such check, and the defendant said, "No, he was doing it, taking this $10,000 off in order to bring the savings ledger down with the general ledger, the controlling book of the bank. He said that the defendant stated that the bank examiners had told him that he was short in his checking ledger that morning, and he was doing this in order to bring down some of the shortage that was found in the checking ledger."

This witness testified that Hedgecock did not have any $10,000 check to cover the $10,000 which he charged up against Wrenn's account. The State also filed an itemized statement which the defendant had given to I. W. Bingham when he audited the books of the Home Banking Company and found a shortage of $123,000, and that at the bottom of

this itemized statement (which amounted to about $80,000) the defendant made the following statement: "To the best of my knowledge and belief these are all the false entries that I have made.   (Signed) Basil H. Hedgecock."

There was very full evidence as to the examination of the bank by the State bank examiners, H. L. Newbold and R. E. Kerr; also by I. W. Bingham and W. S. Courcy, auditors of the Scott, Charnley Company; and the charge of the court was very full and explicit, and the sole exception to the charge is as above given.

This is not a case where there are different acts of the same nature which are usually set out in separate counts, and which may be joined in the same bill, but there is only one act charged, and there are different persons referred to who were intended to be defrauded or deceived.   The verdict of guilty, therefore, settled that the defendant did the act, and if on the evidence there were other persons intended to be defrauded or deceived, and were thus defrauded or deceived, the conviction under the verdict is sufficient.   It is not necessary that it should be specified in the verdict what persons were, and which were not, defrauded or deceived when the verdict finds that any of them were in fact so defrauded or deceived.

Where there are separate counts, a general verdict would be sufficient, though the acts are different if of such nature that they could be joined as separate counts in the same bill.   For a stronger reason, where there is but one act charged, as in this case, but there are divers persons named or referred to as other "persons to the jurors unknown," as having been defrauded or deceived, a verdict of guilty is sufficient if there is evidence sufficient to convict of the intent to defraud or deceive any one of those named, or "any person or persons to the jurors unknown."

Even if the indictment had simply charged an intent to cheat and defraud "persons unknown," without naming any one, it would have been sufficient. *S. v. Faucett,* 20 N. C., 239.   Under the former exceedingly technical rules appertaining to indictments, it was held by *Ruffin, C. J.,* in *S. v. Muse,* 20 N. C., 463, that in a warrant for retailing without license near a church it was not necessary to name any person or persons to whom the article was sold, because each act of selling was not a distinct offense, but only one offense is committed.

In the present case there is but one act charged, and it is alleged to have been against several persons in the alternative, and therefore, even under the former system, the charge would have been sufficient.

In *S. v. Brown,* 170 N. C., 714, where the subject is fully discussed, it was held that it was always sufficient to charge the sale of intoxicating liquor to have been made to a "person or persons to the jurors unknown," and this independent of the provision in the statute of 1913, now C. S.,

3383, which dispenses with the requirement to name any person to whom a sale is made; which statute was held valid in that case, and has been often cited since.

In like manner, C. S., 4621, provides that "in any case where an intent to defraud (which is the case here) is required to constitute the offense of forgery, or *any other offense whatever,* it is sufficient to allege in the indictment an intent to defraud without naming therein the particular persons or bodies corporate intended to be defrauded."

This statute would validate this indictment if there had been any defect in alleging the offense simply to have been an intent to defraud any "person or persons to the jurors unknown."

In like manner, in Rev., 3353, now C. S., 4677, it is provided: "It shall be sufficient to allege in the indictment an intent to defraud without naming therein the particular person or body corporate intended to be defrauded."

In Rev., 3453, now C. S., 4287, it is provided as to indictments for disposal of mortgaged property: "In all indictments for violation of the provisions of this section it shall not be necessary to allege or prove the person to whom any sale or disposition of the property was made"; and there are other offenses as to which there are similar provisions. In *S. v. Brown,* 170 N. C., 715, sustaining the constitutionality of the act which dispenses with the necessity of naming any person to whom the sale of liquor has been made (now C. S., 3383), it was said that the same ruling had been "sustained in *S. v. Ridge,* 125 N. C., 658; *S. v. Howard* (the *'Gold Brick'* case), 129 N. C., 660; *S. v. Taylor,* 131 N. C., 714; and the indictment was held sufficient in several other cases cited in Pell's Revisal under section 3432. *S. v. Burke,* 108 N. C., 750; *S. v. Skidmore,* 109 N. C., 796, and others."

Indeed, in *S. v. Little,* 171 N. C., 806, *Hoke, J.,* said: "As a matter of form, in respect to the feature of the charge, that the unlawful delivery of the quantity (of liquor) specified was to 'a person or persons to the jurors unknown,' the bill of indictment has been held sufficient. *S. v. Dowdy,* 145 N. C., 432; *S. v. Tisdale, ibid.,* 422 (which were prior to the act of 1913, now C. S., 3383), and the principal question presented is whether, on the facts contained in the special verdict, the defendant is guilty of the offense, under the statute, charged against him in the bill"—which was a violation of the law against transporting intoxicating liquors.

Besides, there is this consideration, that if it had been possible that upon the facts of this case there was the slightest lack of information as to the persons whom it was charged the defendant intended to defraud or deceive, C. S., 4613, provides: "In all indictments when further information, not required to be set out therein, is desirable for

the better defense of the accused, the court, upon motion, may in its discretion require the solicitor to furnish the bill of particulars for such matters."

Under the statutes and authorities above cited, it is not necessary that the names of all persons who could possibly have been deceived or defrauded should be set out. The charge "or other persons to the jurors unknown" was sufficient, but if the defendant had needed further information, he waived the requirement that their names should be given to him before pleading his defense by not availing himself of this statute. It may well be that their names were unknown to the grand jury, and proving their names before the trial jury could not prejudice the defendant.

We can only account for the presentation on this occasion of a technicality, which is not sustained by our statutes and procedure, by the fact that it is apparent from the testimony and the incidents of the trial that the defendant having admitted that he made the entry charged, and there being no evidence in the record which would have justified his acquittal, the line of defense presented by his able and distinguished counsel was the only one that could be discovered.

Chief Justice Ruffin, in S. v. Moses, 13 N. C., at p. 463, as far back as 1830, in reference to the act of 1811, ch. 809 (now C. S., 4623), said that it was "enacted that in all criminal prosecutions in the Superior Courts it shall be sufficient that the indictment contain the charge in a plain, intelligible, and explicit manner; and no judgment shall be arrested for or by reason of any informality or refinement, when there appears to be sufficient in the face of the indictment to induce the court to proceed to judgment." And he added these memorable words, which express the best judicial thought of his day, and which since has obtained everywhere: "This law was certainly designed to uphold the execution of public justice, by freeing the courts from those fetters of form, technicality, and refinement which do not concern the substance of the charge, and the proof to support it. Many of the sages of the law had before called nice objections of this sort a disease of the law, and a reproach to the bench, and lamented that they were bound down to strict and precise precedents, neither more brief, plain, nor perspicuous than that which they were constrained to reject. In all indictments, especially in those for felonies, exceptions extremely refined, and often going to form only, have been, though reluctantly, entertained. We think the Legislature meant to disallow the whole of them, and only require the substance, that is, a direct averment of those facts and circumstances which constitute the crime, to be set forth."

The jury found, upon the evidence, that the defendant made the false entry on the books of the bank as charged, and with the intent to defraud

and deceive. It was unnecessary under our statutes to charge the intent to defraud any particular person. It was sufficient to charge that the defendant intended to defraud and deceive other persons than those named, and who were to the jurors unknown, and a conviction upon a general verdict was sufficient without naming unknown persons, and, in fact, the names of the bank examiners were in evidence on the trial and uncontradicted.

No error.