S. P. HANCOCK AND GEORGE W. HUNTLEY, TRADING AS HANCOCK-HUNTLEY COMPANY, v. T. S. SOUTHGATE, G. D. POTTER, J. C. MALBON AND ELIAS ETHRIDGE, TRADING AS SOUTHGATE PACKING COMPANY.

(Filed 17 October, 1923.)

**1. Evidence—Nonsuit—Trials—Questions for Jury—Partnership—Vendor and Purchaser—Instructions.**

Defendant's motion as of nonsuit, upon the evidence introduced at the trial of the cause, is properly denied, though the evidence is circumstantial, if the plaintiff's evidence, taken collectively, is more than a scintilla tending to establish the plaintiff's demand; and upon conflicting evidence the issue is for the determination of the jury; and in this case *held* there was more than a scintilla of evidence tending to show the liability of an alleged partnership, for goods sold and delivered to it through one who purchased for himself, but in the name of the defendant partnership, denying liability. The court's instruction is approved.

**2. Same—Judgments—Statutes.**

Where, in an action against a partnership, service of summons has been made on some of the partners but not all, upon a verdict in plaintiff's favor, a judgment is properly entered binding upon the partnership's joint property, and upon the individual members served, but not individually upon those not so served with process. C. S., sec. 497 (1).

APPEAL by defendant T. S. Southgate from *Grady, J.,* at June Term, 1923, of CARTERET.

Civil action. The plaintiffs, who are partners, claim that they sold defendants, who are partners, trading as Southgate Packing Company, certain fertilizers, goods, supplies and merchandise from and during the period of January, 1920, to 27 April, 1921, totaling the sum of $3,044.70.

The plaintiffs further allege that G. D. Potter was general manager of the Southgate Packing Company at the time the fertilizer, etc., was sold.

The defendant G. D. Potter was served with summons but filed no answer. . T. S. Southgate alone files an answer and denies that he is in any way liable to plaintiffs, and says that "Southgate Packing Company is an unincorporated entirety, owned exclusively by T. S. Southgate."

Hancock-Huntley Company, the plaintiffs, and Southgate Packing Company both did business in the town of Beaufort, N. C. The testimony of G. W. Huntley, one of the plaintiffs, was substantially as follows: He knew Southgate Packing Company only so far as Mr. Potter told him, and the stationery spoke for itself; that defendant G. D. Potter told him he was a member of Southgate Packing Company from its organization in 1920. He sold Southgate Packing Company, under

G. D. Potter, manager, during the spring of 1921, some forty (40) tons of fertilizer, several items of salt in lots of ten (10) bags each. Also bargained to sell a hay press to be used on Southgate farm at Sea Level. They owed the plaintiffs for salt, hay press, plow and fertilizer. That he loaded 44 bags of fertilizer on a barge in charge of L. W. Hassell to go to T. S. Southgate's farm at Sea Level. All of his dealings had been with Southgate Packing Company, and they owed plaintiffs $3,044.70, and no part had been paid. Potter told him to charge it to Southgate Packing Company, to be used on his contract. No one but Potter said anything to him about it. The orders for fertilizer were from Potter, or his bookkeeper. The various items of fertilizer were delivered by phone order of the manager of Southgate Packing Company and invoices mailed immediately each day covering delivery made to Southgate Packing Company, Beaufort. Knew Southgate Packing Company several years prior to 1920. Sold them fertilizer in 1917, 1918, 1919, and 1920. Prior to 1920, Southgate Packing Company had not, to his knowledge, furnished fertilizer to any farmers. All prior accounts with Southgate Packing Company, from 1917 to 1921, had been paid. Never before 1921 did plaintiffs have any contract to furnish fertilizer to Southgate Packing Company or Potter, or to other persons for them. The first deal of this kind — Potter proposed to give plaintiffs $1,000 cash and notes for two-thirds of the account, 60 and 90 days. Plaintiff made the note out "Southgate Packing Company, per ........,." and then Potter said the fertilizer was for him personally. Plaintiffs charged $90 for a hay press, $15 for a plow, the hay press and plow to be tried out and if satisfactory paid for, and $2,939.70 for fertilizer—total claims, $3,044.70. Huntley produced duplicates of the original charges of fertilizer as delivered to Southgate Packing Company, originals were sent to Southgate Packing Company. He never had any personal transactions with Potter.

Several witnesses testified that they farmed and planted potatoes in 1921. Got the fertilizer from plaintiffs. Potter sent them to plaintiffs for the fertilizer. It was also in evidence that Southgate and Potter cultivated 56 acres in potatoes, and that Southgate Packing Company, through Potter, furnished the fertilizer.

L. W. Hassell, for plaintiffs, testified that he was at one time employed by Southgate Packing Company and that the firm was composed of Potter, Malbon and Ethridge. Mr. Potter was manager at this end. He worked under Potter. In 1921 he transferred fertilizer for Potter down to Southgate farm, four tons of which came out of plaintiff's store. Southgate plant was engaged in packing oysters and tomatoes. Did not know what, if any, interest Mr. Potter and other gentlemen had in the business. "All I ever heard was what I learned from the letter head." This was in substance plaintiff's testimony.

T. S. Southgate, one of the defendants, testified as follows: "I have never had a partner. I had Mr. Potter, Mr. Ethridge and Mr. Malbon direct the affairs of the company at Beaufort; they received a percentage. They had no authority to make debts for Southgate Packing Company. They received salary. For eleven years Southgate Packing Company has been engaged in packing oysters almost exclusively. In 1920 we bought some potatoes and undertook to sell them in order to give the factory something to do. I never at any time authorized Mr. Potter to make contracts for furnishing fertilizer; nor did I ever receive or accept any such contract, if made. Bought no fertilizer except 60 tons sent down by me from Norfolk. First I knew of this matter was in July, when they wrote and asked me if I was going to pay this bill and for hay press and plow. I at once told them I had not bought, or authorized to be bought, any fertilizer; so far as hay press and plow, that was Potter's own personal business. Had no contract with Pamlico Fertilizer Company in 1921, and in fact advised them I would not furnish any fertilizer before a bag was furnished of this in dispute. Identified letter. I dictated it. At top appears names of T. S. Southgate, G. D. Potter, J. C. Malbon, Elias Ethridge; that is a form of terminology used with Southgate Packing Company. Those men are my agents. They do not constitute Southgate Packing Company. Have registered my name in Raleigh. Planted potatoes in 1921. Mr. Potter directed operations, under name of Southgate Packing Company. Mr. Potter sold the potatoes, those that came from the 56 acres. I never at any time authorized Mr. Potter to buy any fertilizer from Hancock-Huntley Company."

The letter head referred to above is as follows:

T. S. SOUTHGATE      G. D. POTTER      J. C. MALBON

ELIAS ETHRIDGE

SOUTHGATE PACKING COMPANY

Packers

High-Grade Sea Foods and Vegetables

Manufacturers

Crushed Oyster Shells and Agricultural Lime

Norfolk, Virginia

Brands:                          COVE OYSTERS
DOUBLE EAGLE                    SHRIMP
POTTER                              BEANS
BABY MARY                       TOMATOES
                                     SWEET POTATOES

Factory: Beaufort, N. C.

August 5, 1921.

G. D. Potter, for the defendants, testified substantially as follows: Was in Beaufort in 1921. I bought fertilizer from Hancock-Huntley Company for my personal account without reference to Mr. Southgate. Told plaintiffs Southgate Packing Company had nothing to do with it. I was a salaried man with Southgate Packing Company. Had no interest in Southgate Packing Company except if I made a profit for him I got a per cent. Southgate is owner and proprietor of Southgate Packing Company. Farm and packing company are both owned by Southgate. Those gentlemen on that letter head had nothing to do with the business. I did sign contracts. (These contracts were certain contracts between Southgate Packing Company, of Norfolk, Va., by G. D. Potter, manager, and individuals who were furnished fertilizer to grow potatoes.) I sent these individuals to plaintiffs to get fertilizer for myself personally. Letter heads have been in use about ten years— used by Potter & Southgate. The credit was extended to me.

The following issues were submitted to the jury:

"1. At the time of the transaction referred to in the complaint, were T. S. Southgate, G. D. Potter, J. C. Malbon and Elias Ethridge co-partners in trade, doing business under the name of Southgate Packing Company? Answer: 'Yes.'

"2. If so, in what amount, if any, is Southgate Packing Company indebted to the plaintiffs? Answer: '$3,044.70.'

"3. If not, in what amount is defendant Potter indebted to the plaintiffs? Answer: '———.'"

*C. R. Wheatley for plaintiffs.*
*Julius F. Duncan for defendant.*

CLARKSON, J. The main assignments of errors by the defendant T. S. Southgate are: (1) refusal to nonsuit plaintiffs at close of plaintiffs' evidence; (2) refusal to nonsuit plaintiffs at close of all the evidence.

No summons has been served on J. C. Malbon and Elias Ethridge. The defendant G. D. Potter was served with summons, but filed no answer, and admits liability. The only question involved in this appeal is the liability of T. S. Southgate.

The evidence, taken in a light most favorable to plaintiffs, on the motion of nonsuit, at the close of all the evidence, was circumstantial. There were many circumstances pointing to the fact that T. S. Southgate was a partner in the business and that he obtained beneficial results from the transaction. These circumstances, standing alone, would not be sufficient, but taken all together, and the further fact that he obtained some benefit from the fertilizer, would, under the evidence in this case,

entitle the plaintiffs to have the matter submitted to the jury. From the facts and circumstances the jury *might* reasonably infer that the defendant Southgate was a partner. There was more than a scintilla of evidence of this fact. Where there is *any* evidence to support plaintiff's claim it is the duty of a judge to submit it to the jury, and the weight of such evidence is for the jury to determine. The court below was correct in refusing to nonsuit at the close of all the evidence.

*Stacy, J.,* in *Harper v. Supply Co.,* 184 N. C., 205, says: "The defendants rely chiefly upon their exception to the refusal of the court to grant their motion for judgment as of nonsuit, made first at the close of the plaintiff's evidence, and renewed at the close of all the evidence. The first exception has been waived by the defendants. *Smith v. Pritchard,* 173 N. C., 720. They had the right to rely on the weakness of the plaintiff's evidence when she rested her case; but, having elected to offer testimony in their own behalf, they did so *cum onere,* and only their exception noted at the close of all the evidence may now be urged or considered," citing C. S., 567; *Blackman v. Woodmen of World,* 184 N. C., 75; *S. v. Killian,* 173 N. C., 792.

In *Williams v. Mfg. Co.,* 177 N. C., 515, *Walker, J.,* says: "There was evidence given for the defendant which conflicted with that introduced by the plaintiff, but the jury alone could settle this conflict; and while the plaintiff did not make out a strong case, but rather a weak one, when we review all of the facts in concourse, we cannot withdraw the case from the jury, who are the triers of the facts, if there is any evidence reasonably tending to support the plaintiff's allegations," citing *Wittkowsky v. Wasson,* 71 N. C., 451; *Byrd v. Express Co.,* 139 N. C., 273, and cases cited.

The defendant Southgate complains of the charge of the court below in his other exceptions. We have examined the record carefully and can find no reversible error. The whole matter was left to the jury—the burden of the greater weight of the evidence put on plaintiffs by the court below—and the jury found the issues for the plaintiffs. The jury is responsible for the findings of fact, the court can only declare the law. We can find no error in law.

The judgment seems to be drawn in conformity with C. S., sec. 497, subsec. 1, which is as follows: "If the action is against defendants jointly indebted upon contract, he may proceed against the defendants served, unless the court otherwise directs, and if he recovers judgment it may be entered against all the defendants thus jointly indebted, so far only as that it may be enforced against the joint property of all and the separate property of the defendants served, and if they are subject to arrest, against the persons of the defendants served."

The judgment of the court below is affirmed.

No error.