STATE v. WILL SWITZER.

(Filed 22 January, 1924.)

1. **Courts—Indictment—Counts—Criminal Law—Election of Remedies.**

   Where there are several offenses charged in the bill of indictment, of the same grade of crime and punishable alike, it is, on defendant's motion, within the sound discretion of the trial judge to quash or compel the solicitor to elect.

2. **Banks and Banking—Criminal Law—Abstracting Funds—Statutes.**

   C. S., 4401, making it a criminal offense for the cashier or certain other officers, agents and employees of a bank to be guilty of malfeasance in the respects therein enumerated, making the intent necessary for a conviction, is not in conflict with chapter 4, Laws of 1921, sec. 83, entitled "An act to regulate banking, and repealing all laws in conflict therewith."

STATE *v.* SWITZER.

### 3. Same—Depositor—Officers or Agents.

In order to convict a depositor at a bank who has abstracted funds from the bank in collusion with its cashier, it is not required that he himself was an officer of the bank or that he was present at the time the money was feloniously "abstracted," under the provisions of C. S., 4401; and he may be convicted thereunder when the bill of indictment substantially follows the language of the statute and the evidence is sufficient to sustain the charge therein. This is not applicable to the provisions of the amendatory act of 1921, ch. 4, sec. 83.

### 4. Same—Indictment—Intent.

In order for conviction for malfeasance of bank officers and agents under the provisions of C. S., 4401, it is sufficient to allege in the indictment the "intent to defraud, without naming therein the particular person or body corporate intended to be defrauded," etc. (C. S., 4621); and an indictment under section 4401, charging the act "with intent to injure," is held sufficient.

### 5. Same—Principal Offenders.

Where a depositor, in collusion with the cashier of a bank, has "abstracted" or caused to be abstracted by the cashier moneys of the bank in violation of the provisions of C. S., 4401, though the depositor was not present at the time the offense was committed, he may be convicted as a principal under the counts of the indictment so charging the offense.

### 6. Same—Abstracting Funds of Bank—Embezzlement.

The use of the word "abstract" in C. S., 4401, marks a difference between this statute and C. S., 4268, the latter applying to embezzlement; and under the former statute it is not necessary for the indictment or evidence to comply with the terms of C. S., 4268, excepting offenders under the age of sixteen years.

### 7. Indictment—Criminal Law—Banks and Banking—Abstracting Funds of Bank—Bill of Particulars.

It is within the sound discretion of the trial judge to try, separately or collectively, the defendant, indicted under the provisions of C. S., 4401, for some or all offenses committed by a series of checks on the bank, whereby he had unlawfully "abstracted" the funds of the bank; and where the indictment is sufficient for conviction, the defendant's remedy is by requesting a bill of particulars when he reasonably so desires. C. S., 4613.

### 8. Same—Technicalities.

An indictment for unlawfully abstracting the funds of a bank, to the injury of persons, corporations, etc., is sufficient if it substantially follows the express wording of the statute (C. S., 4401) in a plain, intelligent and sufficient manner, though without strict regard to form, technicality or refinement.

### 9. Banks and Banking—Statutes—Criminal Law—Abstracting Funds—Evidence—Questions for Jury—Nonsuit—Trials.

The evidence in this case that the defendant had violated the provisions of C. S., 4401, in collusion with its cashier, in unlawfully abstracting the funds of the bank, etc., *is held* to be more than a scintilla, carrying the case to the jury, and a judgment as of nonsuit thereon was properly disallowed.

**10. Verdict—Indictment—Several Counts.**

> A general verdict of guilty on all the related counts in a bill of indictment is a verdict of guilty as to each, and will be sustained if the evidence thereon is sufficient for conviction.

**11. Banks and Banking—Criminal Law—Abstracting Funds—Statutes.**

> The legal meaning of the word "abstract," as it appears in C. S., 4401, with reference to the unlawful use of the funds of the bank, is correctly charged under an instruction to the jury defining it as the taking from or withdrawing from the bank, with the intent to injure or defraud, etc.

CRIMINAL ACTION, tried before *Devin, J.,* at June Term, 1923, of GUILFORD.

Appeal by defendant. The essential facts are set forth in the opinion.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*T. J. Gold and Stern & Swift for defendant.*

CLARKSON, J. The defendant was convicted of violation of C. S., 4401, which is as follows:

"*Malfeasance of bank officers and agents.* If any president, director, cashier, teller, clerk or agent of any bank or other corporation shall embezzle, abstract or wilfully misapply any of the moneys, funds or credits of the bank, or shall, without authority from the directors, issue or put forth any certificate of deposit, draw any order or bill of exchange, make any acceptance, assign any note, bond, draft, bill of exchange, mortgage, judgment or decree, or make any false entry in any book, report or statement of the bank, with the intent in either case to injure or defraud or to deceive any officer of the bank, or if any person shall aid and abet in the doing of any of these things, he shall be guilty of a felony, and upon conviction shall be imprisoned in the State's Prison for not less than four months nor more than fifteen years, and likewise fined, at the discretion of the court."

"An act to regulate banking in the State of North Carolina," etc., section 83, chapter 4, Laws 1921, is as follows:

"*Misapplication, embezzlement of funds, etc.* Whoever, being an officer, employee, agent, or director of a bank, embezzles, abstracts, or wilfully misapplies any of the money, funds, credit, or property of such bank, whether owned by it or held in trust, or wilfully and fraudulently issues or puts forth a certificate of deposit, draws an order or bill of exchange, makes an acceptance, assigns a note, bond, draft, bill of exchange, mortgage, judgment or decree, or makes a false statement or certificate as to a trust deposit or contract, for or under which such bank is acting as trustee, or makes a false entry in, or conceals the true

and correct entry in a book, report or statement of such bank, or who shall loan the funds or credit of any bank to any company or corporation known to be insolvent, or which has ceased to exist, or to any person upon the collateral security of any stocks or bonds of such company or corporation which is known to be insolvent or which has ceased to exist or which never had any existence, or fictitiously borrows, solicits, obtains or receives money for a bank not in good faith, intended to become the property of such bank, with intent to defraud or injure the bank or another person or corporation, or to deceive an officer of the bank or an agent appointed to examine the affairs of such bank, or publishes a false report relating to the financial condition of the bank with the intent to conceal its true financial condition or to defraud or injure it or another person or corporation, shall be guilty of a felony, and upon conviction thereof shall be fined not more than ten thousand dollars or imprisoned in the State's Prison not more than thirty years, or both."

In the act, *supra,* regulating banking, the repealing clause is: "All laws and parts of laws in conflict with this act are hereby repealed. This act shall be in force from and after its ratification." It was ratified 18 February, 1921.

At the conclusion of the State's evidence the court below allowed the motion of defendant to nonsuit as to the second, third, and fifth counts in the bill of indictment, and refused to allow motion of nonsuit as to the first and fourth counts, which are as follows:

"The jurors for the State, upon their oath, present: That B. H. Hedgecock and Will Switzer, late of the county of Guilford, on or about the........day of............, 1922, in the year of our Lord one thousand nine hundred and twenty-two, with force and arms, at and in the county aforesaid, unlawfully, wilfully, feloniously, the said B. H. Hedgecock being then and there an officer, to wit, cashier, of the Home Banking Company of High Point, N. C., a bank, did abstract from said bank the sum of twelve thousand eight hundred and forty-three dollars and seventy-five cents ($12,843.75) by means of the following checks: (giving date, amount, and to whom payable, commencing 5 January, 1921, and ending 20 March, 1922—240 in all), with intent to injure, contrary to the statute in such cases made and provided, and against the peace and dignity of the State.

"And the jurors aforesaid do further present that said Will Switzer, late of Guilford County, at and in the county of Guilford, on or about the ........ day of ........ ....., 1922, with force and arms, unlawfully, wilfully and feloniously, while the said B. H. Hedgecock was then and there acting as an officer, to wit, cashier, of the Home Banking Company, a banking corporation, of High Point, N. C., neither said B. H.

Hedgecock nor Will Switzer being an apprentice and not being under the age of sixteen years, did aid and abet the said B. H. Hedgecock in misapplying the sum of $12,843.75, money of said bank, with intent to knowingly and wilfully misapply the same, contrary to the statute in such cases made and provided, and against the peace and dignity of the State. Bower, Solicitor."

R. R. King, for the State, testified in part as follows: "We told Mr. Switzer what Mr. Hedgecock had said about their putting on forced sales and that then they were to divide the money. Mr. Switzer sat there and did not have much to say. Sometimes he would say, 'What can I do about it?' Then Mr. Penny appealed to Mr. Hedgecock to know if he had not stated to us what I had reiterated to Switzer, and he said he had. Hedgecock said that. And all that Switzer would say was, 'What can I do about it?' Then, some question of Switzer giving some kind of security for his debt came up. It was agreed, after much talking, that Mr. Tomlinson, who was also there in the office, should go down and get the money, such cash as Switzer had in his store that night. It must have been near ten o'clock. There was forty or fifty dollars in the store and Switzer said he wanted eight or ten dollars for his wife, and he was allowed to take that, and the balance of the money was brought back by Tomlinson. Tomlinson was to have the keys and was to open up the store in the morning and remain there; Switzer was to conduct the business and look after it; but all the money at the end of each day was to be turned over to Tomlinson as security for the payment of Switzer's obligation, these overdrafts. Switzer agreed to that arrangement. As a result of Switzer's visit, Mr. Tomlinson took his keys and took possession of the store, and he turned over all of his money except seven or eight dollars which Switzer said he wanted to give to his wife. Switzer's business was taken over by and was in the possession of the Home Banking Company until the creditors threw him into bankruptcy."

George T. Penny, for the State, testified in part as follows: "I asked Hedgecock what had become of this money. He then brought up Switzer's checks amounting to $13,000, and he related about what Mr. King has just related, and I asked Hedgecock what was his idea of allowing Switzer to overdraw his account $13,000, and he said that Switzer had agreed with him that he would go to the Northern markets and purchase and buy goods from different merchants, pay a little to each one, ship the goods into High Point to his store there, advertise a sale, and they would divide up this money. I asked Hedgecock why those checks had not been shown to the directors in their meeting. He said he had put a rubber band around them and put them back in a box in the bank and held them there, as he had promised Mr. Switzer

that he would do, excepting that when Switzer sold his goods that they could settle up the matter, pay it up, and that it could be taken care of. After all of this, and after Mr. King came in, Mr. Hedgecock went all over this again before Mr. King. Mr. King called for some blank warrants, and Mr. Tomlinson went after them to Mr. Brown's office. Mr. Brown was justice of the peace. Mr. King started to draw up a warrant and Mr. Hedgecock says, 'I will draw that on the typewriter if you will dictate it.' He drew the warrant and Mr. Brown came in, the magistrate, and the question arose about how the warrant was to be signed. We read the warrant before Mr. Hedgecock, and I said to Hedgecock, 'Is that a true statement made in that warrant; is that true?' He said 'It is,' and I said 'All right, I will sign the warrant.' So the warrant was drawn up and I signed it. Before they put the warrant in the hands of the officer I said, 'I will go down and have a talk with Switzer and see if this matter can be adjusted.' Switzer was not present at any of the conversations with Hedgecock. I went down to Mr. Switzer's store and I told him I wanted to see him on a matter of business. He and I then went to the bank, where Mr. King, Mr. Hedgecock, and the others were, and we went over the matters with him. Mr. Switzer sat quiet, never said anything, never made any denial of it, but says, 'What can we do about it?' Mr. King went over the matter again and he would sit quiet and say, 'What are we going to do about it?' And I said to Switzer, 'The matter is simply this, according to Mr. Hedgecock's statement you have about $13,000 of the bank's money. The bank examiners are examining the bank and it shows quite a shortage here. What we want you to do is to pay this $13,000. We have got to get ourselves in shape to take care of the deposits, and we want you to make this $13,000 good'; and I said to Mr. Switzer, 'Mr. Hedgecock stated that he agreed to pay these checks for you; you were to take the money, buy goods in your store, advertise a big sale, sell the goods, and then you would divide up and then he would take care of you.' I said, 'Mr. Hedgecock, is that right, is that your statement?' and he says, 'That is exactly it, Will; that is what we agreed on.' I said, 'Is that right, Switzer?' And he said, 'But I haven't had my sale yet; what am I going to do? I haven't had my sale; what am I going to do?' And I said, 'We want you to make this $13,000 good, and we want you to make it good and pay this debt.' "

Penny further testified as to the arrangement by which Switzer turned over the store and the keys to Tomlinson. He also said: "Switzer told me that he paid $50 to Hedgecock to take care of these checks. Switzer told me that he was paying Hedgecock, the cashier, to take care of the overdrafts."

.The defendants introduced no evidence. Hedgecock did not deny what the witnesses testified to. Both of the defendants, B. H. Hedgecock and Will Switzer, were convicted and judgment rendered by the court below. Will Switzer alone appealed to this Court, and presents three assignments of error.

The questions involved are set forth succinctly in the defendant's brief. We will consider them, as they cover the assignments of error:

"1. Should the court have quashed the bill of indictment against Switzer?

"2. Should a judgment of nonsuit have been entered at the conclusion of the evidence?

"3. ˙Should the judgment have been arrested after the verdict?

"4. Were sufficient errors committed by the judge in his charge to the jury to grant the appellant Switzer a new trial?"

Should the court have quashed the bill of indictment against Switzer? We think it should as to the fourth count, not as to the first count.

Where there are several offenses, but of the same grade and punishable alike, the power of the court to quash or compel the solicitor to elect is a matter of sound discretion. *S. v. Burnett,* 142 N. C., 580; *S. v. Lewis,* 185 N. C., 643.

Some ·of the checks were given before the ratification of the Banking Act, as will be seen from the indictment. The Banking Act only repeals "laws and parts of laws in conflict." There is no conflict in the material allegations of the count in the bill of indictment with the statutes. *S. v. Foster,* 185 N. C., 674. The language of the act under which defendant is tried is, "With the intent in either case to injure or defraud."

C. S., 4621, is as follows: "In any case where an intent to defraud is required to constitute the offense of forgery, or any other offense whatever, it is sufficient to allege in the indictment an intent to defraud, without naming therein the particular person or body corporate intended to be defrauded; and on the trial of such indictment it shall be sufficient, and shall not be deemed a variance, if there appear to be an intent to defraud the United States, or any State, county, city, town, or parish, or body corporate, or any public officer in his official capacity, or any copartnership or member thereof, or any particular person. The defendant may be charged in the same indictment in several counts with the separate offenses of receiving stolen goods, knowing them to be stolen, and larceny."

In *Carlisle v. State,* 76 Ala., 77, the Court says: "Intent to injure or defraud is made an ingredient of the offense, of which the defendant was convicted. Without this intent there is no guilt. Intent is rarely shown by direct proof, but is inferred from facts in evidence. Still, to authorize a conviction, the jury must be affirmatively convinced such

intent existed; convinced by that measure of proof required in criminal cases. Our statute employs, disjunctively, the two words, 'Injure or defraud.' Either intent is sufficient to constitute the corrupt motive, if the words are employed in a different sense. Are they so employed? The only injury that can be inflicted, 'by any false pretense or token,' by which one person obtains from another any money or other personal property, is the deception which imposes on the confidence of that other. This is a fraud; and we cannot think the Legislature, in employing the word *injure,* intended to express or, considering the connection, could express, more or less than is implied in the word *defraud.* And this interpretation is fortified by the fact that in prescribing a form of indictment for this offense the same Legislature which declared the ingredients of the crime explained the phrase 'with intent to defraud,' and omitted the word injure."

The first count charges that Hedgecock and Will Switzer jointly "did abstract from said bank . . . by means of the following checks," etc., "with intent to injure." In the first count they are charged as principals.

Upon this the defendant's counsel contends that as the statute applies only to a president, director, cashier, teller, clerk or agent of any bank, and as the defendant Switzer occupied no such relation to the Home Banking Company, he cannot be convicted under this first count; that the offense being a felony, he could not be convicted as principal under the indictment, he not being present at the time the offense was committed, and it is suggested that he could be held to answer only to the bill of indictment which charged him with being accessory before the fact to this felony. We, however, do not understand the law as relied upon by the defendant's counsel to be applicable to this case. Wharton in his Criminal Law, Vol. I (11 ed.), p. 326, enunciates, we think, the proper principle applicable to the facts of this case:

"255. *Persons executing parts of crime separately are principals.* Where one assailant strikes a blow which is not fatal, and a confederate follows it up with a fatal blow, both are principals in the homicide. If part of a crime also be committed in one place and part in another, each person concerned in the commission of either part is liable as principal. Hence, if several combine to forge a document, and each executes, by himself, a distinct part of the forgery, and they are not together when the instrument is completed, they are nevertheless all guilty as principals. And if A. counsel B. to make the paper, C. to engrave the paper, D. to fill up the names of a forged note, and they do so, each·without knowing that the others are employed for that purpose, B., C., and D. may be indicted for forgery and A. as an accessory; for if several make distinct parts of a forged instrument, each

is a principal, though he do not know by whom the other parts are executed, and though it is finished by one alone in the absence of the others."

See, also, *S. v. Jones,* 83 N. C., 605; *S. v. Dowell,* 106 N. C., 722. Under the facts of this case, then, Switzer was a principal in the commission of the crime, because he necessarily identified himself· with Hedgecock, the cashier, in the commission of the crime.

The first count charges Hedgecock, in accordance with the statute, "an officer, to wit, cashier." Under the statute Switzer need not have been an officer, he would be guilty as principal under the facts of this case. The charge under the statute was "abstract," not embezzling. It was not necessary to allege that the defendant is over the age of 16 years. In fact, C. S., 4401, is different from C. S., 4268, which is an embezzlement statute, and excepts the persons named therein under the age of ·16 years. We do not think the defendant could complain of the charge of abstracting in a total sum $12,843.75. The amount was made up of 240 separate and distinct transactions. Abstracting money from the bank by means of any one of the 240 checks, contrary to the statute, would be unlawful. In the discretion of the court below, the defendant could be tried separately or all of the checks treated as a whole.

The statute not only makes it unlawful to "abstract" but also to "wilfully misapply," "with the intent in either case to injure or defraud or to deceive any officer of the bank, or if any person shall aid and abet in the doing of any of these things;" etc.

We think, under the language of the statute, the first count is drawn according to the practice and procedure of this Court. Form, technicality and refinement have given way to substance, and it is sufficient if the indictment contains the charge in a plain, intelligent, and explicit manner. *S. v. Leeper,* 146 N. C., 655; *S. v. Hedgecock,* 185 N. C., 714; *S. v. Hawley,* 186 N. C., 433.

We think the word "injure" in the first count is in the language of the statute and sufficient. A bill of particulars could have been asked for, if desired. C. S., 4613; *S. v. Leeper, supra.*

Should a judgment of nonsuit have been entered at the conclusion of the evidence? It should have been as to the fourth count. We think not as to the first count. The evidence of King and Perry and the act of Switzer in turning over the keys, store, etc., were more than a scintilla of evidence. Where there is any evidence to support a claim, it is the duty of the judge to submit it to the jury, and the weight of such evidence is for the jury to determine. *Hancock v. Southgate,* 186 N. C., 282. There was a general verdict of guilty, which, in law, was a verdict of guilty on each and every count. The general verdict of guilty upon

two counts will be sustained if the evidence justifies either. *S. v. Toole,* 106 N. C., 736; *S. v. Strange,* 183 N. C., 775.

Should judgment have been arrested after the verdict? We think not except as to the fourth count. For the reasons before mentioned, we think the indictment charges defendant with a crime. Were sufficient errors committed by the judge in his charge to grant the appellant Switzer a new trial? We think not.

A juror asked the court below after the charge to give the legal meaning of the word "abstract." The court answered: "Abstract means to take from, withdraw. That is what is meant by abstracting, withdrawing, taking from. Abstraction, that is taking from with intent to injure or defraud."

We think the court below, under the first count in the indictment and the evidence, was correct in the definition.

Our statute is similar to the U. S. statute. "Abstract, as used in Rev. St. U. S., sec. 5209, is a word of simple popular meaning, without ambiguity. It means to take or withdraw from; so that to abstract the funds of a bank, or a portion of them, is to take and withdraw from the possession and control of the bank the moneys and funds alleged to be so abstracted. To constitute that offense, within the meaning of the act, it is necessary that the money and funds should be abstracted from the bank without its knowledge and consent, with intent to injure and defraud it, or some person or persons, or to deceive some officer of the association, or an agent appointed to examine its affairs." *U. S. v. Northway,* 7 Sup. Ct., 580, 584; 120 U. S., 327; 30 L. Ed., 664; 1 Words and Phrases, p. 46.

We have examined the charge of the court below and the assignments of error carefully, and for the reasons given we can see no prejudicial or reversible error.

No error.