THE STATE v. M. D. BRADY et al.

*Indictment—Conspiracy—Bill of Particulars—Judge's Charge.*

1. In an indictment for a conspiracy to cheat and defraud, the means to be used need not be charged.

2. When there is a general verdict upon an indictment containing two or more counts, if either count is valid it will support the verdict. *State* v. *Toole*, 106 N. C., 736.

3. When an indictment, otherwise valid, does not convey sufficient information to enable the defendant to prepare his trial, he can apply for a bill of particulars. The rule governing applications for a bill of particulars stated.

4. A prosecutor in a criminal action is not disqualified for that reason as a juror.

5. Though a challenge for the defendant is erroneously disallowed, yet, if it appear that no juror objectionable to such defendant sat on the jury, it is no ground of exception, and it makes no difference whether a juror objectionable to such defendant is stood aside by reason of his having other challenges unexhausted, or is rejected on the challenge of a co-defendant.

6. The acts of the different parties alleged to be conspirators can be given in evidence to prove the conspiracy. *State* v. *Anderson*, 92 N. C., 732, approved.

7. Whether or not a witness is an expert is a question of fact for the Court, and its finding is not reviewable. *State* v. *Cole*, 94 N. C., 958, approved.

8. The testimony of a witness as to a collateral matter cannot be contradicted in order merely to impeach him by showing its untruth.

9. When evidence is offered that the defendants "salted" a gold mine, with a view of proving the conspiracy to cheat and defraud, it is not requisite to show, first, that the defendants knew how to "salt" a mine.

10. On an indictment for a conspiracy to cheat and defraud, the Court refused to charge that if the defendants honestly believed the representations to be true, or if the representations were merely matter of opinion, or if defendant got cheated by his fear that some one else would get ahead of him, the defendants would not be guilty: *Held,* no error, for the conspiracy, and not the execution of it, is the issue on which the guilt or innocence of the defendants depended.

STATE *v.* BRADY.

11. The declaration of a party, after the consummation of a conspiracy, is evidence only against the defendant who makes it.

12. *The Code,* § 413, only requires the Judge to " explain the law arising upon the evidence." The misconception as to this founded upon *State* v. *Boyle,* 104 N. C., 800, corrected.

13. Declarations and acts of a party charged with conspiracy are competent against the other defendants who entered into the conspiracy, when made prior to its completion.

14. It is not material, in an indictment for conspiracy, that the unlawful purpose should be accomplished.

This was an Indictment for Conspiracy to cheat and defraud, tried before *Graves, J.,* and a jury, at August Term, 1890, of MOORE Superior Court.

The indictment was as follows:

" The jurors for the State upon their oath present, that N. P. Brady, M. D. Brady, R. D. Williams and J. W. H. Cockerman, late of the county of Moore, on the 10th day of December, 1887, at and in the county of Moore, with the intent to defraud, unlawfully, wickedly and deceitfully did conspire together to cheat and defraud William K. Jackson of his goods and chattels, bonds and tenements, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

" And the jurors aforesaid, upon their oath aforesaid, do further present that the said N. P. Brady, M. D. Brady, R. D. Williams and J. W. H. Cockerman, late of the county of Moore, at and in the said county on the 10th day of December, 1887, with intent to defraud, unlawfully, wickedly and deceitfully did conspire together to cheat and defraud William K Jackson of his goods and chattels, lands and tenements, and that the said defendants, in pursuance of said conspiracy, did falsely and fraudulently pretend to said W. K. Jackson that two certain tracts of land in Chatham County contained gold mines, well knowing that neither of the said tracts of land contained a gold mine; and that, in

pursuance of said conspiracy, the said M. D. Brady did then and there in Moore County unlawfully, knowingly and designedly obtain from the said W. K. Jackson $800 in money and the said Jackson's note for $700, being then and there the property of the said Jackson, and the said N. P. Brady did then and there in said county of Moore, unlawfully, knowingly and designedly obtain from the said W. K. Jackson a certain tract of land on Deep River in Moore County of the value of $3,000, being then and there the property of the said Jackson, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State."

The defendants moved to quash the bill, and also in arrest of judgment, which being refused they excepted. There were sundry exceptions to the evidence, to the charge and for refusal to charge, all of which sufficiently appear in the opinion. Two of the defendants were acquitted. M. D. Brady and J. W. H. Cockerman were convicted and sentenced, and appealed.

*The Attorney General* and *Messrs. J. C. Black* and *W. J. Adams*, for the State.

*Messrs. Douglas & Shaw*, for the defendants.

CLARK, J.: The defendants moved to quash the indictment as to each count, on the ground (1) that it charged no indictable offence; (2) that it did not allege the means by which the cheating and defrauding were to be effected.

This motion being denied, it was renewed on the same grounds in arrest of judgment, and again denied. A general verdict of guilty as to appellants was returned.

There were two counts in the indictment, and if either was good it would support the verdict. *State* v. *Morrison*, 2 Ired., 9; *State* v. *Toole*, 106 N. C., 736, and cases there cited. Upon reason and precedent, however, we think both counts are sufficiently alleged. The first count is almost

*in totidem verbis* with that in *Sysderff* v. *Queen*, 11 Ad. &
Ellis, 245, which was held sufficient by the Court of Exchequer
Chamber affirming the ruling of the Queen's Bench. The
opinion was delivered by WILD, C. J. (afterwards Lord
Truro), and cites with approval *Queen* v. *Gompertz*, 9 Ad. &
El., 823, opinion by Lord DENMAN; *King* v. *Gill*, 2 B &
Ald., 204, opinion by Lord TENTERDEN; and *King* v. *Eccles*,
3 Doug., 337. In the last three cases the indictment charged
the conspiracy to cheat and defraud " by divers means," but
this was no specification of the means, and even those words
did not appear in the indictment in Sysderff's case. In
*King* v. *Eccles*, BULLER, J., says that the means need not be.
charged, for they are " matters of evidence to prove the
charge, and not the crime itself," and that it is quite suffi-
cient to charge the defendants with illegal conspiracy, which,
of itself, is an indictable offence, and in *King* v. *Gill*, also
just cited, the Court points out that the conspiracy would
be indictable even when the parties had not settled upon
what means they would employ to effectuate their purpose,
and hence the means need not be charged. To the same
effect are later cases. *Latham* v. *The Queen*, 9 Cox Cr. Cases,
516 (1864), and others. The same rule has been upheld in
*Commonwealth* v. *McKisson*, 8 Ser. & Rawle (Pa.), 419, and
in other cases in this country 3 Greenleaf Ev., § 95. There
have been decisions to the contrary holding that the means
must be charged, but the leading authorities to that effect
are to be found in the United States and New York Courts,
in which jurisdictions the law on this subject has been
modified by statute.

As the conspiracy or illegal combination is the indictable
offence, though no act may be done in pursuance thereof,
and, indeed, without agreeing upon the means to be used, it
is difficult to discover any reason why the means should be
charged. "If two or more persons conspire to do a wrong,
this conspiring is an act rendering the transaction a crime,

without any step taken in pursuance of the conspiracy." 1 Bish. Cr. Law, § 432. And in *State* v. *Younger,* 1 Dev. 357, it is said: "Every conspiracy to injure individuals, or to do acts which are unlawful, or prejudicial to the community, is a conspiracy, and indictable." "If unexecuted, the means cannot be stated; if executed, the means employed are but evidence of the offence, or an aggravation of it, * * * for the crime of conspiracy consists of the *conspiracy,* and not of the execution of it." Wright's Crim. Conspiracy, 189, 191. What has been said as to the first count applies equally to the second. Indeed, the second count is an almost exact copy of·the indictment, which, upon a motion in arrest of judgment, was held good in *State* v. *Younger, supra,* the opinion being delivered by TAYLOR, C J.

While the Courts are not disposed to encourage slovenly or careless pleading in either civil or ciminal actions, the whole tendency of legislation is against exacting over-refinement and nicety of technical allegation. The office of the indictment is to give the defendant notice of what charge he has to meet. In *Goersen* v. *Commonwealth,* 99 Pa. St., 398 (which was an indictment for murder), it is tersely said: "The nature and cause of a criminal prosecution is sufficiently averred by charging the crime alleged to have been committed. This must be done. The mode or manner refers to the instrument with which it was committed, or the specific agency used to accomplish the result. It is not necessary to aver either of these in the indictment. Whenever one, before trial, needs more specific information than is con‑tained in the indictment, to enable him to make just defence, it may be obtained on proper application to the Court." There is nothing in the case to suggest that the defendants were not fully aware of the specific offence with which they were charged, but as application for a bill of particulars is not unusual practice in indictments for this crime, and may be resorted to in a trial for all offences, though not very com-

mon hitherto in this State, it may be useful to cite the rules governing such applications, which are that the defendant or his counsel should first apply to the officer prosecuting for the State; if refused, he should then, before the cause is called for trial, apply to the Court, who, in its sound discretion, will direct a bill of particulars to be furnished. This practice is much favored, because no demurrer or motion to quash lies as to a bill of particulars, but if an insufficient bill is furnished, the Court will order a fuller statement of particulars to be made. Such applications should always be made in time to avoid any delay being caused in the trial. If too long delayed the Court would refuse the application. The same practice obtains in civil cases. *The Code,* § 259, provides, "the Court may, in all cases, order a bill of particulars of the claim of either party to be furnished."

*Second Exception.*—The defendant Brady challenged as a juror one who was prosecuting witness in another criminal action in that Court, in which action the *capias* had been served, but the defendant had not pleaded. The challenge was overruled, and the defendant then peremptorily challenged the juror. After having exhausted his peremptory challenges, the same defendant afterwards challenged one Ray, offered as a juror, which challenge was disallowed. As a co-defendant, who had not exhausted his challenges, thereupon peremptorily challenged Ray, it is clear that Brady had no ground of objection. Besides, a prosecuting witness in a criminal action is not disqualified as a juror. He is not a "party to an action" within the purview of the statute. The State and the defendant are the only parties to a criminal action by indictment. Indeed, the disqualification attaches only to a party to a *suit* pending and at an issue, and it is doubted if it apply at all to a defendant, even in a criminal action. *Hodges* v. *Lassiter,* 96 N. C., 351.

*Third Exception.*—During the trial certain witnesses testified to evidence tending strongly to show that the mine sold

to the prosecutor had been "salted," that is, that gold obtained elsewhere had been scattered in the alleged mine by the defendants, so that the prosecutor was misled, and bought the land believing that the gold was indigenous. The defendants objected, because these "means" were not charged in the indictment. If they had been so charged the indictment might have been for the substantive offence, and not for the conspiracy, still, testimony of such acts, jointly done by defendants, was competent as evidence of a previous unlawful combination and conspiracy to "cheat and defraud" the prosecutor. *State* v. *Anderson,* 92 N. C., 732.

*Fourth Exception*—The exception that the Court found, after examination, a witness (who testified that he had been a miner over twenty years) to be an expert, "although defendants' counsel propounded to him numerous technical questions, all of which he failed to answer," cannot be sustained. Whether or not a witness is an expert is to be determined by the Judge, and, like other findings on questions of fact, his conclusion is final and not reviewable. The value of the testimony of the witness, when admitted, is for the jury. *State* v. *Cole,* 94 N. C., 958, and numerous cases there cited.

*Fifth Exception.*—One Cagle testified that he had found on the land of one Stewart a nugget of gold, and had sold it for eight dollars, and had never notified Stewart of finding it, nor accounted to him for it. Stewart, who had already testified, was subsequently recalled to the stand, and defendant proposed "to ask him concerning the nugget for the purpose of impeaching Cagle." We do not see how the evidence, if admitted, could have had that effect, but, as its bearing could only be to contradict Cagle as to a collateral matter, and was not asked to show temper or bias, it was properly ruled out.

*Sixth Exception.*—The State asked an expert, in the proper hypothetical form, as to the quantity of gold which would

be necessary to "salt" a mine, and also how the earth might be "salted" with gold. The defendants objected that there was no evidence that the defendants knew anything about the various modes of "salting" earth, or even knew what "salting" meant. There had been evidence tending to show, if believed, that the defendants *had* "salted" the mine, and, from the verdict, it seems, the jury did believe it. The object of the State was to show that the defendants had, in fact, "salted" the mine. It was not necessary to show, first, that the defendants knew how to do it.

The defendants asked the Court to instruct the jury, first, that there was no sufficient evidence to go to the jury of a combination between any two or more of the defendants and that, therefore, the jury should acquit. The second and third prayers for instruction were based on the same ground, and all three, upon the testimony, were properly refused. The fourth prayer for instruction was that, though the representations might be false, if the defendants honestly entertained the opinion they were true, they would be not guilty. The fifth prayer was, that if the representations in regard to the amount of gold or the value of the minerals on said land were merely expressions of opinion in regard thereto, defendants were not guilty  The sixth prayer was, that if the prosecutor was influenced in closing the trade when he did by the fear that Stewart or some one else would get ahead of him, the defendants would not be guilty unless the jury were satisfied beyond a reasonable doubt that such fear was caused by the false representations of the defendants. These prayers seem based upon the misconception that the defendants were on trial for the substantive offence of obtaining the property of the prosecutor by false pretences, and the Court properly refused them in in the words asked. The Court pointed out the distinction, and further told the jury that, even should they find there was false representations, and that the defendants salted the

mine, they would not be guilty of this indictment unless the jury found there was a combination and conspiracy to cheat and defraud. The seventh prayer was, that there was no evidence tending to show that the transactions in proof in regard to M. D. Brady was intended or could, in fact, cheat or defraud the prosecutor and should be discarded. This was properly refused.

The last prayer for instruction was, that no admission or declaration of any of the defendants made after the alleged consummation of the conspiracy is competent evidence either to establish the conspiracy or its consummation. The Court properly charged that such evidence would only be competent against the defendant making such admission of declaration.

The defendants assign as error in the charge as given—

1. That "the Court did not eliminate the material facts on both sides and apply the principles of law to them so that the jury might decide the case according to the credibility of the witnesses and the weight of the evidence." This exception seems to be copied from that in *State* v. *Boyle,* 104 N. C., 800, and there seems to be a misapprehension generally existing that in granting a new trial in that case the Court sustained the exception of the defendant broadly as made by him and as a formula applicable in all cases. This it did not do, MERRIMON, C. J., in *State* v. *Pritchett,* 106 N. C., 667. What the Court did was to hold that the statute, *The Code,* § 413, required the Judge "to state in a plain and correct manner the evidence given in the case and explain the law arising thereon." This the Court held was not done in Boyle's case, and that the defendant had just ground to complain, because "his counsel in apt time had requested the Court to call the attention of the jury to specific parts of the evidence tending to discredit the evidence of the prosecutrix and instruct them as to its nature, bearing and application," which the Judge "declined to do." In the

present case the Judge complied, as we think, with the plain requirements of the law, and the charge is a clear and intelligent presentation of the law arising on the evidence.

2. For failure to give the special instructions asked. They have already been disposed of.

3. Because the Court charged the jury: "Mere expressions of opinion by the defendants, or any of them, as to the quantity of gold on the land would not make the defendants expressing such opinion guilty; the acts and declarations of the defendants are evidence for the jury to consider in determining whether, in fact, the defendants did form the conspiracy with which they are charged, and here I may repeat to you that the acts and declarations of any one of the defendants, although evidence against the party making it, is not evidence against any of the others unless you find there was a common purpose, then the acts and declarations of each one of the parties who had the common purpose are competent evidence for the jury to consider as against each one of the defendants who had such common purpose to unlawfully cheat and defraud W. K. Jackson. It is not material, in an indictment for a conspiracy, that the unlawful purpose should be accomplished." We find no error in this, especially when construed in connection with the context of the whole charge.

*Per Curiam.*                                   No error.