STATE v. WALLACE B. DAVIS, LUKE LEA AND LUKE LEA, JR.

(Filed 15 June, 1932.)

1. **Criminal Law L e—Refusal of motion for continuance is not subject to review in absence of manifest abuse of discretion.**

    A motion for a continuance is addressed to the sound discretion of the trial court, and his refusal to grant the motion is not subject to review in the absence of manifest abuse, and such abuse was not made to appear in this case.

2. **Criminal Law L d—Where exceptions are not discussed in briefs they are deemed abandoned.**

    Exceptions which are not brought forward and discussed by the appellant in his brief are deemed abandoned under Rule of Practice in the Supreme Court, 28.

3. **Criminal Law D a—County in which agreement was made or any overt act done in furtherance thereof has jurisdiction of conspiracy.**

    An indictment for conspiracy may be laid in the county where the unlawful agreement was entered into or in which any overt act was done by any of the conspirators in furtherance of their common design.

**4. Same—Where jurisdiction of court is not ousted on face of indictment plea in abatement to jurisdiction is bad.**

Where the jurisdiction of the court is not ousted on the face of the indictment the position that the court does not have jurisdiction is not available on a plea in abatement, C. S., 4625, it being a matter of proof upon the trial with the presumption in favor of jurisdiction and the burden upon the defendant.

**5. Criminal Law L e—Motion for change of venue is addressed to discretion of court and his order is not reviewable in absence of abuse.**

A motion for change of venue in a criminal action on the ground of local prejudice and for the purpose of securing a fair trial, C. S., 471, is a matter resting within the sound legal discretion of the trial judge and not subject to review on appeal in the absence of gross abuse of this discretion.

**6. Courts A f—Where special session has been duly called and trial judge holds valid commission plea to jurisdiction is bad.**

Where a criminal action is tried at a special term of the court duly called and the trial judge holds a valid commission from the Governor a plea to the jurisdiction of the court is properly refused.

**7. Criminal Law I c—Appearance of outside counsel for prosecution is a matter under supervision of the trial court.**

In this case the appearance of counsel for the prosecution other than the solicitor of the district is *held* a matter in the control and sound discretion of the trial court, it appearing that the solicitor remained in control of the trial, and it not appearing that the solicitor did not request or welcome the assistance of other counsel.

**8. Indictment O a—An indictment will not be quashed for mere informality or refinement.**

An indictment will not be quashed for mere informality or refinement, C. S., 4623, and where the indictment contains sufficient matter to enable the court to proceed to judgment a motion to quash for duplicity or indefiniteness is properly refused, and a motion to quash for redundancy or inartificiality is addressed to the sound discretion of the trial court.

**9. Conspiracy B a—It is not necessary that defendant be capable of committing the crime in order to convict him of conspiracy to commit it.**

A conspiracy is an agreement to do an unlwful thing or to do a lawful thing in an unlawful way or by unlawful means, this being the crime and not its execution, and it is not necessary that all of the conspirators be physically able to carry the conspiracy into execution if one or more of them is able to do so, and it is not necessary for an indictment 'charging a conspiracy to violate the provisions of N. C. Code, 224(e), to allege that all of the defendants were officers or employees of the bank, although the statute applies only to misapplication, embezzlement, etc., by officers, employees, agents or directors of a bank with intent to injure or defraud it, the indictment being sufficient if it alleges that some of the defendants were officers or employees of the bank and that the other defendants conspired with them to do the unlawful act.

10. **Conspiracy B b—Declaration of conspirator made in furtherance of common design is competent against co-conspirators.**

Upon a showing of the existence of a conspiracy, or facts from which a conspiracy may be inferred, the acts and declarations of each conspirator done or uttered in furtherance of the common design are admissible in evidence against them all.

11. **Criminal Law G s—Authenticity of letters may be proven by circumstantial evidence.**

Where letters, typewritten or otherwise, are competent as evidence upon the trial their authenticity may be proven by circumstantial evidence.

12. **Criminal Law L e—The burden is upon appellant to show error.**

The burden of showing error on appeal is on the appellant, as the presumption is against him.

13. **Same—In this case held: fatal error was not made to appear in the admission of evidence outside bill of particulars.**

Although the State is restricted in its proof to the items set down in a bill of particulars, where, in a trial for misapplication of funds pursuant to an unlawful conspiracy, extending over a considerable period of time the defendants' motion for a bill of particulars is "partially denied" and evidence is admitted regarding items not included in the bill of particulars, but upon request of defendants' counsel the trial court instructs the jury to consider this evidence only as circumstances bearing out the particular items included in the bill, it will be deemed that there was an understanding, acquiesced in by all, that the solicitor should furnish the defendants a list of the items upon which he expected to press for conviction but was not to be confined to this list in the introduction of evidence, and the admission of such evidence will not be held as fatal error upon the defendants' exceptions, the defendants having failed to overcome the presumption against error.

14. **Conspiracy B b—Criminal conspiracy may be shown by circumstantial evidence.**

The criminal offense of unlawful conspiracy may be shown by circumstantial evidence.

15. **Same—Evidence of criminal conspiracy held sufficient in this case.**

Where there is evidence that four or five men, some of them high officials of a bank, have acted in concert and have obtained wide access to the assets of the bank contrary to the ordinary rules of prudence and in violation of the banking laws of the State, and that their acts caused loss to the bank, the evidence is sufficient to be submitted to the jury on a charge of conspiracy to violate the provisions of N. C. Code, 224(e), and misapplication pursuant to the conspiracy, and to overrule the defendants' demurrer to the evidence, C. S., 4643, the question of intent to injure the bank being for the jury under conflicting evidence, and the fact that some of the funds were returned to the bank without immediate loss to it not affecting the character of the act at its inception.

**16. Criminal Law D a—Where evidence shows that overt act in further-ance of conspiracy was done in this State our courts have jurisdic-tion.**

Where the evidence discloses that overt acts in furtherance of a criminal conspiracy were done in this State the Superior Court of the county in which such overt acts were done has jurisdiction of the crime and all the conspirators thereto, and the contention of some of the defend-ants that the action should be dismissed because the evidence showed that they were nonresidents and that they did not participate in any activity in this State cannot be maintained.

**17. Criminal Law L e—In this case exceptions relating to one count need not be considered, conviction on other counts being upheld.**

Where a conviction on several counts in an indictment is upheld on appeal, the defendants' exceptions relating to another count need not be considered when the sentence on such count runs concurrently with and does not exceed the sentence upon the counts upon which the conviction is sustained.

**18. Banks and Banking I c—On charge of misapplication of funds of bank pursuant to conspiracy proof of any item is sufficient for con-viction.**

Upon a charge of misapplication of funds of a bank pursuant to a con-spiracy, proof of misapplication of any item charged is sufficient to sup-port a conviction.

**19. Criminal Law I e—Exceptions to remarks of counsel should be taken before verdict.**

Exceptions to the remarks of counsel should be taken before verdict.

**20. Criminal Law I g—Misstatement of contentions must be called to court's attention in apt time.**

Exceptions to the statement of the contentions of a party in the judge's charge to the jury will not be considered when the alleged misstatements were not called to the court's attention in apt time to afford an oppor-tunity to correct them, if erroneous, and the charge in this case *is held* not to contain reversible error.

**21. Criminal Law L d—The record and brief on appeal should be nar-rowed to matters of substance and moment.**

It is required that an appellant should show with conciseness in the record and his brief the material exceptions necessary to be considered in the decision of the case, C. S., 643, and all exceptions taken upon counts upon which no conviction was had should be eliminated, and the record and brief should be narrowed to matters of substance and moment by the elimination of immaterial exceptions taken upon the trial through abundance of precaution.

APPEAL by defendants from *Barnhill, J.,* at July-August Special Criminal Term, 1931, of BUNCOMBE.

Criminal prosecution tried upon the following indictments:

### FIRST COUNT BILL NO. 553.

In this count the defendants are charged with conspiracy, in that, it is alleged they feloniously agreed, conspired and confederated among themselves and with J. Charles Bradford and others, Wallace B. Davis being an officer, director and employee of the Central Bank and Trust Company, to cheat, defraud or injure the said Central Bank and Trust Company and to misapply its moneys, funds and credits to the amount of $300,000 on or about 8 October, 1930, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

(There was a verdict of not guilty as to all the defendants on the second and third counts in said bill, while the fourth count was not submitted to the jury (because included in the fifth), and the verdict on the sixth count was set aside. All of these counts are of the same tenor as the first, except they differ in amounts and dates, and cover the period from 10 May to 23 October, 1930.)

### FIFTH COUNT BILL NO. 553.

In this count the defendants are charged with conspiracy, in that, it is alleged they feloniously agreed, conspired and confederated among themselves and with J. Charles Bradford and others, Wallace B. Davis being an officer, director and employee of the Central Bank and Trust Company, to cheat, defraud or injure the said Central Bank and Trust. Company, and to misapply its moneys, funds and credits to the amount of $100,000 on or about 8 October, 1930, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

### SEVENTH COUNT BILL NO. 554.

In this count (single count bill), the defendants and J. Charles Bradford—Wallace B. Davis and J. Charles Bradford being officers and directors of the Central Bank and Trust Company—are charged, pursuant to a criminal conspiracy, with the fraudulent and felonious misapplication of more than a million dollars of the funds, credits and property of the said Central Bank and Trust Company on or about 19 November, 1930, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

### STATEMENT OF THE CASE.

Preliminarily, it may be stated that, at the times material to the charges laid in the indictments, Wallace B. Davis and J. Charles Bradford were president and cashier respectively, as well as directors, of the

Central Bank and Trust Company, a banking corporation chartered under the laws of this State with its principal place of business at Asheville, N. C. The said Davis was also president of the Central Securities Company of Asheville, a company affiliated with the bank. The defendants, Luke Lea, Luke Lea, Jr., and E. P. Charlet, were residents of Nashville, Tenn., and interested, as officers, agents, employees, or otherwise, in a number of business enterprises in that State, including banks, newspapers, brokerage and insurance firms.

The Central Bank and Trust Company was in need of money. It was the thought of Luke Lea, expressed as early as 5 May, 1930, in a letter to Wallace B. Davis, that the "North Carolina situation" could be taken care of by the merger of a number of banks and increasing the original capital assets from time to time by the "Holding Company purchasing the increased capitalization of the Central Bank in North Carolina so as to acquire other attractive banking situations." The details of the proposed organization are not disclosed by the record, but it does appear that transactions of considerable magnitude were contemplated. On 16 May, Lea again wrote Davis, thanking him for booklet containing the "Banking Law of North Carolina" and enclosed two consolidated statements of "the North Carolina banks," evidently those under consideration for the merger.

Davis confided to W. D. Harris, manager of the bond department of the Central Bank and vice-president of the Central Securities Company, that "he hoped to work out some matters in coöperation with Col. Lea." His statement was, that he thought it would be to the advantage of both himself and Lea to coöperate on certain matters in New York, and hoped their plans would be successful. That he, Davis, was interested in commercial banking and would follow that; that Col. Lea was interested in newspaper publishing and would follow that; and that Mr. Caldwell (meaning Rogers Caldwell) would run the investment banking side of their enterprise.

A number of firms, in which the Leas were interested, opened accounts with the Central Bank and Trust Company and obtained banking accommodations, as did the Leas personally. Later, all became heavily indebted to the bank.

On 2 September, Lea wrote Davis that Rogers Caldwell would handle certain bonds, and by October, 1930, the general plan of the defendants had broadened out so as to include various interests in Kentucky. By this time, Luke Lea, Jr., is writing to Davis and suggesting that they could buy controlling interest in a bank in Kentucky for $60,000, pay a 300% cash dividend, sell a good part of nearly one million in bonds owned by the bank and substitute "our issues instead."

The character of the transactions carried on by the defendants is disclosed by the following excerpt from a letter written by Luke Lea, Jr., under date of 10 October, 1930, to J. C. Bradford, cashier of the Central Bank and Trust Company:

"We have the $100,000 cashier checks Mr. Davis sent Colonel Lea. These cashier checks have the following endorsements on the back: $25,000—Tennessee Hermitage, $45,000—Commerce Union, $30,000—Commerce Union. This, according to our figures, would leave an overdraft on Tuesday night of $70,000.

"Wednesday, 1 October, we deposited $76,000 to your account which leaves us a balance of $6,100. Friday, 3 October, we deposited $50,000 of cashier checks which left us overdrawn $44,000 and gave cashier checks to E. A. Lindsey, trustee, for $50,000, which makes us overdrawn $94,000 on 2 October. On 3 October, we transferred $50,000 by wire to New York and on Saturday, 4 October, gave a check for $20,000 on Central Bank and Trust Company, and payable to Central Bank and Trust Company and checked $10,000 direct on Central Bank and Trust Company, making a total of $30,000 which would leave us overdrawn $74,000. Deposited check on New York for $50,615.86, which leaves us overdrawn $125,515.86.

"On 9 October, we drew a draft on you for $80,000, making a total overdraft of $204,515.86, less deposit today of $60,500, total overdraft $144,015.86. This does not include any cashier checks except those I have outlined above, nor does it include any certificates of deposit, except the $80,000 which you originally sent us.

"Therefore, I am enclosing you deposit slip for $25,000, which you sent me as it does not check with our records. If you will send me statement of the Commercial Appeal's account, I will immediately work this out, as I deposited $90,000 to their credit today.

"We have to account to you for additional certificates of deposit of $100,000."

In all, the record discloses that the Leas and the companies in which they were interested borrowed from the Central Bank and Trust Company a total of $875,000; that, in the short period from 15 September to 1 November approximately $780,000 in certificates of deposit were issued and handled by the defendants; and that during the period covered by the evidence, from May to November, more than a million dollars in cashier's checks and drafts were issued and handled by the defendants. In addition, the Leas had in their possession bonds of the Central Securities Company and the Universal Mortgage Company, which they obtained from the Central Bank and Trust Company without paying for them, and a part of which they were able to use for credit purposes. During all this time, the cash reserve of the Central Bank

and Trust Company was not only deficient, prohibiting such loans under the law, but the evidence tends to show that the bank was then insolvent. Luke Lea's personal account was overdrawn much of the time, at one time as much as $90,000. The Central Bank and Trust Company closed its doors 11 November, 1930.

## MOTIONS, OBJECTIONS AND RULINGS PRIOR TO TRIAL.

Prior to entering upon the trial of the cause, the defendants asked for a continuance, principally upon the ground of the sudden illness of L. E. Gwinn, one of defense counsel, which, it is alleged, resulted in defendants' unpreparedness to go to trial. Overruled; exception.

The motions for continuance having been denied, the nonresident defendants filed pleas in abatement on the grounds that there was no evidence before the grand jury except hearsay evidence; and that said defendants were neither actually nor constructively present within the State of North Carolina at the time or times of the commission of the several offenses set out in the indictment. Overruled; exception.

The defendants then lodged a motion for change of venue, alleging that a fair and impartial trial could not be had at that term of court in Buncombe County. Overruled; exception.

Objection was thereupon entered to the jurisdiction of the court, it being alleged that no warrant of law existed for the calling of said Special Term. Overruled; exception.

Objection was next interposed to the appearance of counsel for the prosecution other than the solicitor of the district. Overruled; exception. Thomas L. Johnson of Asheville and L. P. McLendon of Durham appeared with the solicitor in the trial of the cause. They were employed at the instance of the Banking Department of the State, and through authority of the Governor, to aid in the prosecution of the defendants.

Finally, the defendants moved to quash the indictments on the grounds of uncertainty and duplicity, and for the further reason, it was not alleged that the nonresident defendants were officers, agents or employees of the Central Bank and Trust Company. Overruled; exception.

## EVIDENCE ON THE FIRST COUNT.

In support of the first count in the indictment, the evidence tends to show that on 8 October, 1930, certificates of deposit, six in number aggregating $300,000, and all payable to the Bank of Tennessee, were issued by the Central Bank and Trust Company and delivered to the defendant, Wallace B. Davis, on instructions from him. As the Bank of Tennessee had no account with the Central Bank and Trust Company, C. J. Hawkins, assistant cashier, who issued them, could not

understand the charge against the Bank of Tennessee, but upon inquiry, his first instructions were confirmed. No money, checks or bills of exchange were received for these certificates of deposit—"just used the debit ticket in paying for them." Hawkins was instructed by Davis to carry these certificates of deposit to the office of Luke Lea in Nashville, Tenn., which he did. "I delivered the bonds and these certificates of deposit to Mr. Charlet, who is in the office there. I got a receipt for the bonds; that is all."

On 13 October, these same certificates were returned to the Central Bank and Trust Company unendorsed by the payee and apparently unused. "Mr. Bradford told me," William McCants testifying, "to run these items through the records as having been returned to the bank and supposedly having been brought by Mr. Charlet." They were canceled 14 October.

On 23 October, certificates of deposit in the same denominations and amounts, all payable to the Bank of Tennessee, were issued by J. E. Reister, assistant cashier, on instructions from J. Charles Bradford, the cashier. They were all dated 8 October, on instructions from Bradford. For these certificates of deposit, a cash item against the Bank of Tennessee went into the window of C. J. Hawkins, and on 3 November he was instructed to charge the certificates to stocks and bonds. In the meantime, Hawkins spoke to Davis and Bradford about the matter a number of times. Davis referred to a telephone conversation, and Bradford said at one time that he was expecting to receive something from Tennessee through the mail. These certificates of deposit, aggregating $300,000, were placed with the Fourth and First National Bank of Tennessee, secured by bonds ostensibly purchased from Caldwell and Company under a "repurchase-sales agreement."

In the meantime, 22 October, on instructions from the defendant Davis, who was then in New York, the witness Harris called a meeting of the executive committee of the Central Securities Company and had a resolution passed authorizing the sale of certain bonds to Col. Luke Lea or to one of his companies. Shortly thereafter, E. P. Charlet appeared in Asheville, on Sunday, and caused the witness Taylor to sign a false set of minutes, in which it was made to appear that said bonds might be purchased by the substitution or exchange of other bonds.

## EVIDENCE TOUCHING THE FIFTH COUNT.

On 8 October, 1930, ten cashier's checks of $10,000 each, aggregating $100,000, were issued by the Central Bank and Trust Company, without receiving therefor anything of value at the time. These were carried in the cage of the head bookkeeper (Mr. Blackwell) as a "debit ticket"

or cash item until their return. "Q. Mr. McCants, do you know where those cashier's checks had been between the date of issue and the date Mr. Bradford handed them to you? A. Nothing except that receipt from Charlet." Apparently these checks were originally issued in blank. When returned "Ourselves" had been inserted as payee in some and "Luke Lea" in others. One bore the endorsement, "Pay to order of *Memphis Commercial Appeal,* Luke Lea; Luke Lea, Jr., attorney in fact"; another, "Pay to order of Memphis Commercial Appeal, Inc., National Investment Trust, Inc., E. P. Charlet, treasurer." At the same time an additional item of $100,000 in New York drafts was being carried in the cage of the head bookkeeper as a cash item, the subject of the sixth count in the bill of indictment. Some of these cashier's checks were returned unused, others were charged to the personal account of Luke Lea, at that time overdrawn, though through error perhaps. "The accounts were very much confused. It was difficult to find out what the true balance and the true overdrafts were." On 11 October, Luke Lea, Jr., wrote the defendant Davis that he was using three of these cashier's checks, and the record shows that four were actually paid, one on 13 October, one on 14 October, and two on 15 October. The others were returned without being used.

### EVIDENCE RESPECTING THE SEVENTH COUNT.

On 23 October, M. R. Blackwell, acting for the Central Bank and Trust Company, at the direction of its cashier, J. Charles Bradford, took $305,000 tax anticipation notes of the city of Asheville, going in great haste by airplane, and delivered them to Col. Lea in Nashville, Tenn. While out of the possession of the bank, no entry was made as to their disposition, until 19 November, the day the bank closed, when the defendant Davis signed a memorandum directing that the books of the bank be balanced by charging the account of "stocks and bonds" with the sum of $55,000. When the bank closed $45,000 of these notes remained unaccounted for, and they were not in the possession of the Central Bank and Trust Company.

The record contains a mass of evidence relative to other items covered by this count, but the above will suffice from the view we take of the case.

### OBJECTIONS TO EVIDENCE.

Numerous objections were interposed to the introduction of evidence, the principal ones being (1) to statements of alleged coconspirators not made in furtherance of the common design, (2) to certain letters, on the ground that their genuineness had not been established, and (3) to items not enumerated in the bill of particulars.

### DEMURRER TO EVIDENCE.

At the close of the State's evidence, the defendants, and each of them, entered a demurrer and moved for judgment as in case of nonsuit. Overruled; exception.

The defendants rested their case without offering any evidence.

### EXCEPTIONS TO REMARKS OF COUNSEL.

The entire argument of counsel for the State appears in the record. This is prefaced with the observation: "Except as otherwise expressly shown, exceptions to arguments were made after verdict." The arguments are interspersed with numerous objections, but without differentiation as to exceptions taken before and after verdict.

### OBJECTIONS TO THE CHARGE.

The charge is replete with exceptions ranging from substance to form.

### VERDICT ON FIRST COUNT.

Guilty as to Wallace B. Davis, Luke Lea and Luke Lea, Jr. Not guilty as to E. P. Charlet.

### JUDGMENT ON FIRST COUNT.

Wallace B. Davis: Imprisonment in the State's prison for a term of not less than 2 nor more than 3 years.

Luke Lea: Imprisonment in the State's prison for a term of not less than 3 nor more than 5 years.

Luke Lea, Jr.: Imprisonment in the State's prison for a term of not less than one nor more than 3 years. Judgment to be suspended upon the payment of a fine of $10,000.

### VERDICT ON FIFTH COUNT.

Guilty as to Wallace B. Davis, Luke Lea and Luke Lea, Jr. Not guilty as to E. P. Charlet.

### JUDGMENT ON FIFTH COUNT.

Wallace B. Davis: Imprisonment in the State's prison for a term of not less than 2 nor more than 3 years, to begin at expiration of sentence imposed on first count.

Luke Lea: Imprisonment in the State's prison for a term of not less than 3 nor more than 5 years, to begin at expiration of sentence imposed on first count.

Luke Lea, Jr.: Imprisonment in the State's prison for a term of not less than one nor more than 3 years, to begin at expiration of sentence imposed on first count. Judgment to be suspended upon payment to Buncombe County of $5,000 "to be applied to the payment of the costs of this term of court."

### VERDICT ON SEVENTH COUNT.

Guilty as to Wallace B. Davis, Luke Lea and Luke Lea, Jr. Not guilty as to E. P. Charlet. J. Charles Bradford was not on trial.

### JUDGMENT ON SEVENTH COUNT.

Wallace B. Davis: Imprisonment in the State's prison of not less than 4 nor more than 6 years. "Sentence to run concurrently with those heretofore imposed."

Luke Lea: Imprisonment in the State's prison for a term of not less than 6 nor more than 10 years. "Sentence to run concurrently with sentences heretofore imposed."

Luke Lea, Jr.: Imprisonment in the State's prison for a term of not less than 2 nor more than 4 years. "Sentence to run concurrently with sentences pronounced on the first and fifth counts." Judgment to be suspended upon the payment of a fine of $5,000 and the payment of an additional sum of $5,000 to Buncombe County "to be applied to the costs of this term of the court."

Defendants appeal, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*R. R. Williams for defendant, Wallace B. Davis.*

*Albert L. Cox and L. E. Gwinn for defendants, Luke Lea and Luke Lea, Jr.*

STACY, C. J., after stating the case: Going directly to the exceptions, and considering them in the order above set out, we may say that the refusal of the trial court to grant the defendants' request for a continuance on account of the illness of counsel, was a matter resting in his sound discretion and is not subject to review on appeal, except in case of manifest abuse. *In re Bank,* 202 N. C., 251; *S. v. Rhodes,* 202 N. C., 101; *S. v. Sauls,* 190 N. C., 810, 130 S. E., 848. No abuse of discretion has been made to appear on the present record. *S. v. Riley,* 188 N. C., 72, 123 S. E., 303. True, the right of confrontation carries with it the right of a fair opportunity to present one's defense. *S. v. Ross,* 193

N. C., 25, 136 S. E., 193; *S. v. Hardy,* 189 N. C., 799, 128 S. E., 152. But the defendants seem to have been abundantly represented by other counsel.

Assignments based on defendants' exceptions to the rulings of the court on their pleas in abatement, so far as they relate to the action of the grand jury, do not appear to have been brought forward and discussed in appellants' brief. They are, therefore, deemed to be abandoned. *Piner v. Richter,* 202 N. C., 573; *Cole v. Boyd,* 175 N. C., 555, 95 S. E., 778; *Gray v. Cartwright,* 174 N. C., 49, 93 S. E., 432. "Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." Rule 28; *In re Beard,* 202 N. C., 661. The relation between appellants' brief and the record in this respect has not been discovered even after a voyage of exploration, which we do not ordinarily make without guides. *Cecil v. Lumber Co.,* 197 N. C., 81, 147 S. E., 735. The defendants may have concluded that these exceptions, in so far as they challenge the action of the grand jury, are without merit in view of what was said in *S. v. Levy,* 200 N. C., 586, 158 S. E., 94.

With respect to the venue of the offenses, it is sufficient to say that the indictments properly bring the case within the jurisdiction of the Superior Court of Buncombe County. *U. S. v. Wells,* 192 Fed., 870. "If the conspiracy be entered into within the jurisdiction of the trial court, the indictment will lie there, though the overt act is shown to have been committed in another jurisdiction, or even in a foreign country." *Hyde v. Shine,* 199 U. S., 62.

It is generally held that the venue in an indictment for conspiracy may be laid in the county where the agreement was entered into, or in any county in which an overt act was done by any of the conspirators in furtherance of their common design. For example, where a conspiracy is formed at sea, the venue may be laid in any county in which an overt act is committed by one of the conspirators on land. *People v. Mather,* 4 Wendell, 229, 21 Am. Dec., 122. The fact that the operations take place in different states, as the necessities of the conspirators may require, does not affect the jurisdiction of the state in which any or all of them reside, since "otherwise the offense would be committed with impunity." *Bloomer v. State,* 48 Md., 521.

Furthermore, this position is not available to the defendants on their pleas in abatement, the jurisdiction of the court not being ousted on the face of the indictments. C. S., 4625. "If the defendant wishes to rely upon the fact that the offense was committed outside the State, he cannot move to quash or in arrest, but must prove the fact in defense under his plea of not guilty." *S. v. Long,* 143 N. C., 671, 57 S. E., 349.

Jurisdiction would be ousted upon showing that the offense was committed out of the State. *S. v. Buchanan,* 130 N. C., 660, 41 S. E., 107. But the presumption is in favor of jurisdiction, and the burden is on the defendants. *S. v. Barrington,* 141 N. C., 820, 53 S. E., 663; *S. v. Mitchell,* 83 N. C., 674.

The motion for change of venue on the ground of local prejudice and to secure a fair trial, was also a matter resting in the sound discretion of the trial court. C. S., 471; *Stroud v. U. S.,* 251 U. S., 15. The defendants have no just cause to complain at the action of the judge in this respect, for he did yield to their request to the extent of ordering a jury from another county. C. S., 473; *S. v. Kincaid,* 183 N. C., 709, 110 S. E., 612.

The plea to the jurisdiction of the court was likewise properly overruled. The special term had been duly called and the judge held a valid commission from the Governor. This was sufficient for him. *S. v. Watson,* 75 N. C., 136; *S. v. Lewis,* 107 N. C., 967, 12 S. E., 457; *S. v. Turner,* 119 N. C., 841, 25 S. E., 810; *S. v. Wood,* 175 N. C., 809, 95 S. E., 1050. Besides, the assignment of error based on this exception does not seem to be discussed in appellants' brief. Doubtless after reading the authorities, it was decided to abandon the exception.

The appearance of counsel for the prosecution, other than the solicitor of the district, was a matter which the trial court necessarily had under its supervision. The solicitor at no time relinquished control of the case, nor does it appear that the assistance of other counsel was not requested or welcomed by him. But without regard to situations, different from the one now in hand, we hold that on the present record, the matter was in the control and sound discretion of the presiding judge. (This assignment of error, No. 7 in the record, is erroneously designated "Sixth" in appellants' brief. We are then referred to the brief in another case for the argument on the point, but we are not able to find the argument in that brief.)

The defendants' final objection before going to trial was motion to quash the indictments on the grounds of uncertainty, duplicity and failure to aver that the nonresident defendants were officers, agents or employees of the Central Bank and Trust Company. Motions of this kind are not favored. *S. v. Knotts,* 168 N. C., 173, 83 S. E., 972. "The courts usually refuse to quash on the application of the defendant where the indictment is for a serious offense, unless upon the plainest and clearest grounds; but will drive the party to a demurrer, or motion in arrest of judgment, or writ of error," as the case may require, or as the defendant may be advised. *S. v. Colbert,* 75 N. C., 368; Chitty's Crim. Law, 300.

The statute, C. S., 4623, provides against quashal for mere informality or refinement, and judgments are no longer stayed or reversed for non-essential or minor defects. C. S., 4625; *S. v. Beal,* 199 N. C., 278, 154 S. E., 604. The modern tendency is against technical objections which do not affect the merits of the case. *S. v. Hardee,* 192 N. C., 533, 135 S. E., 345; *Rudd v. Casualty Co.,* 202 N. C., 779. If the bill or proceeding contain sufficient matter to enable the court to proceed to judgment, the motion to quash for redundancy or inartificiality in statement is addressed to the sound discretion of the court. *S. v. Knotts, supra.* There was no error in refusing to quash the indictments on the grounds of duplicity and indefiniteness. *S. v. Beal, supra.*

The failure to aver that the nonresident defendants were officers, agents or employees of the Central Bank and Trust Company, if such be essential, would properly arise on demurrer or motion in arrest of judgment. *S. v. Mitchem,* 188 N. C., 608, 125 S. E., 190. But it is not conceded that such averment is necessary to the charge of conspiracy. A person may be held liable as a conspirator, even though he be incapable of committing the crime which is the object of the conspiracy, if it appear that one or more of his coconspirators has the capacity to commit the offense. *S. v. Switzer,* 187 N. C., 88, 121 S. E., 43; *S. v. Dowell,* 106 N. C., 722, 11 S. E., 525; *S. v. Jones,* 83 N. C., 605; 5 R. C. L., 1063.

True, the statute, N. C. Code, 224(e), provides that: "Whoever being an officer, employee, agent or director of a bank, with intent to defraud or injure the bank, . . . embezzles, abstracts, or misapplies any of the money, funds, credit, or property of such bank . . . shall be guilty of a felony," etc. But on a charge of conspiracy to violate this statute, the position of the nonresidents would seem to be untenable. The gist of a conspiracy is the unlawful concurrence of two or more persons in a wicked scheme—the combination or agreement to do an unlawful thing or to do a lawful thing in an unlawful way or by unlawful means. *S. v. Ritter,* 197 N. C., 113, 147 S. E., 733. Indeed, the conspiracy is the crime and not its execution. *S. v. Wrenn,* 198 N. C., 260, 151 S. E., 261. Compare *Hyde v. U. S.,* 225 U. S., 347. "As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is completed." *S. v. Knotts, supra.*

There is a distinction between the offense to be committed and the conspiracy to commit the offense. *S. v. Brady,* 107 N. C., 822, 12 S. E., 325. In the one, the *corpus delicti* is the act itself. In the other, it is the conspiracy to do the act. Note, 14 Ann. Cas., 156.

In *People v. McKane,* 143 N. Y., 455, 38 N. E., 950, the defendant was tried separately and convicted of an offense under the New York

Penal Code similar in its essential features to the offense of conspiracy, upon allegation and proof that the defendant, who was not an election official, had conspired with certain election officers to commit the offense, the Court, in affirming the conviction, said: "The fact that he may, for some reason, be incapable of committing the same offense himself is not material so long as it can be traced to him as the moving cause by instigating others to do what he could not do himself. This was the rule of the common law, and it has been applied to offenses like this under special statutes."

The general rule is, that an indictment for conspiracy will lie if one or more of the conspirators be capable of committing the offense which is the object of the conspiracy, albeit some of the conspirators, standing alone, may be incapable of its commission. *Gallagher v. People,* 211 Ill., 158, 71 N. E., 842; *S. v. Huegin,* 110 Wis., 189, 85 N. W., 1046, 62 L. R. A., 700.

Little need be said about the objections to statements of alleged co-conspirators not made in furtherance of the common purpose. The rule is well established that upon showing the existence of a conspiracy, or facts from which it may be inferred, the acts and declarations of each conspirator, done or uttered in furtherance of the illegal design, are admissible in evidence against all. *S. v. Turner, supra; People v. Cory,* 148 Pac. (Cal.), 532. "Every one who enters into a common purpose or design is equally deemed in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others, in furtherance of such common design." *S. v. Jackson,* 82 N. C., 565. Indeed, when a conspiracy is established, everything said, done or written by any one of the conspirators, in execution or furtherance of the common purpose, is deemed to have been said, done, or written by each and all of them, and may be proved against any or all. 5 R. C. L., 1089.

But declarations of one of the alleged conspirators, not made in furtherance of the common design, would not be competent against the others. *S. v. Ritter, supra; S. v. Dean,* 35 N. C., 63. We do not find that the rulings on evidence in any way violated these principles.

Complaint is also made to the rulings of the court in admitting certain letters, the authenticity of which is challenged. That the authorship and genuineness of letters, typewritten or other, may be proved by circumstantial evidence, is fully established by the decisions. *Hedgepeth v. Coleman,* 183 N. C., 309, 111 S. E., 517 (anonymous typewritten communication). The action of the court in admitting the letters in question was well within the rules of evidence.

The most serious assignments, thus far considered, are those directed against the introduction of testimony concerning items not mentioned in the bill of particulars. It is the holding with us that when the solicitor files a bill of particulars, either at the request of the defendant or on order of the court, the State is restricted in its proof "to the items therein set down." *S. v. Wadford,* 194 N. C., 336, 139 S. E., 608. The function of a bill of particulars is (1) to inform the defense of the specific occurrences intended to be investigated on the trial, and (2) to limit the course of the evidence to the particular scope of inquiry. *Gruber v. Ewbanks,* 199 N. C., 335, 154 S. E., 318; *S. v. Brady, supra.* That the judge was inattentive to this rule is pressed with vigor and stressfully contended for by the defendants. It could be wished that the record were clearer or that the ambiguity on this point might have been clarified when the case on appeal was settled.

However, there are several reasons why we cannot hold that the defendants have successfully handled the laboring oar on these exceptions: It is suggested by the Attorney-General that the items mentioned by the witnesses were but prodigal, included in totals, and necessarily had to be mentioned in order to eliminate them. And further that said items could, in no event, have had any appreciable effect upon the result.

The defendants filed two separate requests in writing for a bill of particulars. At the end of each request, this notation appears: "Motion partially denied." The solicitor thereupon furnished "a list of the amounts of money, property and credits of the Central Bank and Trust Company alleged to have been abstracted, embezzled and misapplied by the defendants."

From the testimony of the bookkeeper, N. H. Payne, a witness for the State, the following may be taken as typical of the record:

"Witness: My attention has been directed to a particular item. It is a total on the cash book that includes a cashier's check payable to the *Memphis Commercial Appeal* in the sum of $50,000.

"Q. On the same date please state if included in the total of your cash book is another cashier's check payable to Luke Lea in the sum of $50,000 ? (Objection; overruled; exception.) A. Yes sir.

"The defendants move the court to instruct the jury that the foregoing cannot be considered as evidence of guilt against the defendants in the case in which they are being tried.

"The court: Evidence about any transaction not included in the bill of particulars—you cannot return a verdict of guilty from whatever you may find, from this particular instance, but you may consider them as circumstances bearing out the particular counts included in the bill of particulars."

The meaning of this portion of the record is not altogether clear, but considering it in the light of the court's rulings, the requests of the defendants for limitation of the effect of the evidence, and the further fact that in the seventh count the defendants are charged with misapplications, pursuant to an unlawful conspiracy extending over a considerable period of time, it seems reasonable to conclude the understanding on all hands at the trial, acquiesced in by all, was that the solicitor should furnish the defendants a list of the items upon which he expected to press for conviction, but in undertaking to establish the alleged conspiracies, this list was not to be regarded as controlling in the introduction of the State's evidence. This interpretation accords with the "partial denial" of defendants' motions for bill of particulars, with the requests and rulings limiting the effect of the evidence, and harmonizes the record with the decisions. We, therefore, conclude, without impinging upon the rule announced in *Wadford's case,* that fatal error has not been made to appear in these exceptions. The burden is on appellants to show error, and they must make it appear plainly, as the presumption is against them. *Poindexter v. R. R.,* 201 N. C., 833, 160 S. E., 767; *In re Ross,* 182 N. C., 477, 109 S. E., 365.

The defendants put their greatest trust in the demurrers interposed under C. S., 4643, at the close of the State's evidence. They were content to rest their defense upon the protection which silence affords them; and it is conceded that if the prosecution has failed to prove its case, or if the gravamen of the offense has been made to rest only in the field of speculation, no crime has been established and the defendants are entitled to be discharged. *S. v. Johnson,* 199 N. C., 429, 154 S. E., 730; *S. v. Swinson,* 196 N. C., 100, 144 S. E., 555; *S. v. Montague,* 195 N. C., 20, 141 S. E., 285; *S. v. Brackville,* 106 N. C., 701, 11 S. E., 284. But if there be any evidence sufficient to prove the fact in issue, or to sustain the allegations of the indictment, the case is one for the jury. *S. v. Carlson,* 171 N. C., 818, 89 S. E., 30.

While terribly simple and quite elementary, it may not be amiss to observe that conspiracies, like other crimes involving fraud and deceit, may be proved by circumstantial evidence. *S. v. Martin,* 191 N. C., 404, 132 S. E., 16. Direct proof of the charges is not essential, for such is rarely obtainable, but they may be, and generally are, established by a number of indefinite acts, each of which standing alone, might have little weight but taken collectively, they point unerringly to the existence of a conspiracy. *S. v. Wrenn, supra.* When resorted to by adroit and crafty persons, the presence of a common design often becomes exceedingly difficult to detect. Indeed, the more skillful and cunning the accused, the less plainly defined are the badges which usually denote their

real purpose. Under such conditions, the results accomplished, the divergence of those results from the course which would ordinarily be expected, the situation of the parties and their antecedent relations to each other, together with the surrounding circumstances, and the inferences legitimately deducible therefrom, furnish, in the absence of direct proof, and often in the teeth of positive testimony to the contrary, ample ground for concluding that a conspiracy exists. 5 R. C. L., 1088.

If four men should meet upon a desert, all coming from different points of the compass, and each carrying upon his shoulder a plank, which exactly fitted and dovetailed with the others so as to form a perfect square, it would be difficult to believe they had not previously been together. At least it would be some evidence tending to support the inference.

So in the instant case, when it is shown that four or five men, moving together, are given wide access to the assets and credits of a bank, in derogation of the ordinary rules of prudence, and in violation of the banking laws of the State, it affords more than a scintilla of proof that they were not acting in concord by accident. *S. v. Shipman,* 202 N. C., 518.

But it is said their purpose was to aid the bank rather than to injure it, and more or less plausible explanations are suggested in their behalf. On the other hand the evidence is susceptible of a different interpretation, and the jury has so decided after having heard fully the contentions of both sides. It is in evidence that the defendants had in mind a gigantic scheme for taking care of the "North Carolina situation." Their method of operation is graphically described by Luke Lea, Jr., in a letter to the defendant Davis under date of 2 September, 1930, in which he suggests that they can purchase controlling interest in a Kentucky bank for $60,000, pay a 300% cash dividend, take the bonds of that bank and substitute "our issues instead."

And so the prosecution contends that the same method of procedure was pursued in connection with the assets and credits of the Central Bank and Trust Company. They say that while ostensibly bona fide purchases of stocks and bonds may appear to have been made from Caldwell and Company, the real and ultimate purpose of the defendants was to take the certificates of deposits, cashier's checks and other assets of the Central Bank and Trust Company, and to substitute therefor "our issues." The fact that the original issue of $300,000 certificates of deposit, the subject of the first count, was returned without immediate loss to the bank, and certificates of like denominations and amounts were later issued and dated back to correspond with the first, does not perforce affect the quality of the act in its inception, nor does it ex-

culpate the defendants from all intentional wrong. That the credit of the bank was unlawfully used, and to its hurt, and that the defendants conspired so to use it, is a permissible inference from all the evidence on the record.

Just here, however, the defendants, Luke Lea and Luke Lea, Jr., stressfully contend that whatever inculpatory inferences may be permissible from the State's evidence as against them, the same evidence, with equal clearness, excludes any suggestion of participation or activity on their part within the State of North Carolina. All that they did was done in the State of Tennessee. Hence, upon this showing, they contend that the jurisdiction of the court was ousted and the case should have been dismissed as to them. *S. v. Buchanan, supra.*

A criminal conspiracy may be formed in one jurisdiction and executed in another, in which event, under the common-law procedure, prosecution may be had in either jurisdiction. *U. S. v. Wells, supra;* 5 R. C. L., 1076. Wherever the conspirators enter into the illegal agreement, there the offense is perpetrated, and they may be immediately prosecuted. *Thompson v. State,* 106 Ala., 67. But if, after forming the illegal confederation, they go into another jurisdiction to execute their plans and there commit an overt act, they may be prosecuted in the latter jurisdiction without any evidence of an express renewal of their agreement, for the law considers wherever they act, there they renew, or perhaps, to speak more properly, there they continue their agreement, and this agreement is renewed or continued as to all whenever any one of them does an act in furtherance of their common design. *Qui facit per alium facit per se. People v. Mather, supra.* In this connection, it was remarked in *Price v. Henkel,* 216 U. S., 493, that one might be a party to the formation of a conspiracy within a jurisdiction without being himself physically present therein.

It is well settled that a prosecution for criminal conspiracy may be had in any jurisdiction where an overt act is committed by any one of the conspirators in furtherance of the common design, though the other conspirators may never have been present therein. *Hyde v. U. S.,* 225 U. S., 347, Ann. Cas., 1914A, 614, and note; *S. v. Turner, supra.*

In the instant case, the evidence tends to show that overt acts in furtherance of the alleged conspiracy were committed by Davis and Bradford, two of the alleged conspirators, in Buncombe County, this State, thus giving to the Superior Court of that county jurisdiction of the alleged offenses.

That the cashier's checks, the subject of the fifth count, were issued when the bank was insolvent and without presently receiving therefor anything of value, is not seriously questioned. But it is contended no

ultimate harm came to the bank and therefore this count should be dismissed. Men of reasonable minds might easily draw different conclusions from the evidence, hence the fact in issue was one for the jury.

The *modus operandi*, or method pursued by the defendants in carrying on their many business transactions, is more or less clouded in mystery. One of their own counsel, in criticising the State's evidence, said it was "clear as mud." But the State's case is only a picture of what was found in the bank after the crash. The State did not make the picture. If the indicia of wrongdoing be unjust to the defendants, which could easily have been explained, it is unfortunate that this was not done. The defendants had the right to remain silent, but this also involved the risk of an adverse verdict, where the evidence is sufficient to go to the jury. *S. v. Tucker*, 190 N. C., 708, 130 S. E., 720. The evidence was amply sufficient to go to the jury on the first and fifth counts as to all of the defendants.

With respect to the seventh count, it is unnecessary to consider the exceptions directed thereto *seriatim*, for, as to each of the defendants, the sentence on this count is made to run concurrently with the sentences imposed on the first and fifth counts, and in no instance does the sentence imposed on the seventh count exceed the sentences on the first and fifth counts. So, even if error were committed with respect to the seventh count, which has not been made to appear, it could avail the defendants nothing, for this would not affect the validity of the trial on the other counts. *S. v. Beal, supra.*

On this seventh count the State was not required to prove all of the misapplications alleged. Proof of any one, which clearly appears from the evidence above set out, suffices to support a conviction. *People v. Cory*, 148 Pac. (Cal.), 532.

Touching the exceptions to the remarks of counsel, it is sufficient to say that those entered after verdict were not seasonably taken. *S. v. Tyson*, 133 N. C., 692, 45 S. E., 838. And we have been unable to determine, with the aid of appellants' brief or otherwise, which exceptions were taken in apt time. Nevertheless, they have all been examined and none discovered of sufficient merit to warrant extended consideration in a written opinion.

Practically the entire charge of the court has been made the subject of exception, but a careful perusal of it leaves us with the impression that the defendants have no just cause to complain either at its content or form. A detailed consideration of the exceptions would only call for a repetition of familiar principles. Many of the assignments are directed to instructions on the second, third and sixth counts, upon which no verdict was had or allowed to stand against the defendants. They are, therefore, necessarily excluded from consideration on appeal. *Plemmons*

v. *Murphy*, 176 N. C., 671, 97 S. E., 648; *Cobb v. R. R.*, 175 N. C., 130, 95 S. E., 92; *Warehouse Co. v. Chemical Co.*, 176 N. C., 509, 97 S. E., 472. Others are taken to the statement of contentions, but as the judge was not given an opportunity to correct them, if erroneous, by having them called to his attention at the time, they are likewise ineffectual on appeal. *Mfg. Co. v. Building Co.*, 177 N. C., 103, 97 S. E., 718; *S. v. Little*, 174 N. C., 800, 94 S. E., 1; *S. v. Foster*, 172 N. C., 960, 90 S. E., 785; *S. v. Sloan*, 199 N. C., 598.

Taken as a whole, the charge is in substantial accord with the decisions on the subjects presented by the exceptions.

The instant record falls short of complying with the rules established for the preparation of cases on appeal. It is unnecessarily voluminous, 1,221 pages, and contains much that might have been omitted. *Sigman v. R. R.*, 135 N. C., 181, 47 S. E., 420. Clarity and succinctness are not its virtues. The defendants were convicted on three counts and acquitted on four, yet many of the exceptions are directed to the counts on which no conviction was had. A reformation of the record might well have been ordered. We are invited to consider 300 exceptions and assignments of error. In *Pretzfelder v. Ins. Co.*, 123 N. C., 164, 31 S. E., 470, *Clark, J.*, said: "Certainly it can never be necessary to attempt to convince an appellate court that 64 fatal errors, each justifying a new trial (and none other should be presented here), have been committed below." And in *Tilghman v. R. R.*, 171 N. C., 652, 89 S. E., 71, *Allen, J.*, remarked: "It is not to be expected that we should discuss all of the assignments of error, ninety-four in number, and it is not conceivable that a judge commissioned to hold the courts of the State should have committed so many errors in the trial of an action to recover damages for negligence." If 94 exceptions be regarded as too many in a negligence case and 64 as excessive in an action to recover on a contract of insurance, what shall be said of 300 in a prosecution for conspiracy and misapplication? Obviously they cannot be treated separately in an opinion without extending it to a "burdensome and intolerable length." *Willis v. New Bern*, 191 N. C., 507.

It is quite natural that in the progress of a long *nisi prius* trial, many exceptions should be taken out of the abundance of precaution, but when counsel come to prepare the statement of case on appeal, conciseness is a requirement of the statute, C. S., 643, and both record and briefs should be narrowed to matters of substance and moment. All exceptions found to be trivial or untenable should be sifted out and abandoned, to the end that the questions seriously debated may be clearly presented and the attention of the Court focused on them. *Baker v. Clayton*, 202 N. C., 741. "Never run rabbits while chasing the fox," is a rule of the sportsman equally worthy of observance in the trial of causes as on the

hunt. The original brief of the defendant contains 284 pages, and in addition, a supplemental brief of 35 pages has been filed in the cause.

As the privilege was extended to counsel from another state to argue the case, and mitigating circumstances have been made to appear on behalf of resident counsel, we are disposed to look upon these matters with an indulgent eye, but in so doing, the labors of the Court have been increased manifold.

No error.