STATE OF NORTH CAROLINA v. EDWARD LOUIS CONYERS

No. 689SC389

(Filed 23 October 1968)

**1. Assault and Battery § 6— secret assault — sufficiency of evidence**

Evidence tending to show that while operating a farm tractor the prosecuting witness heard a popping noise, that he turned around and saw defendant holding a raised rifle, that he was then shot in the arm, that he was shot in the leg as he attempted to get off the tractor and was again shot after he had fallen to the ground, *is held* sufficient to be submitted to the jury on the issue of defendant's guilt of secret assault, and the State's further evidence that defendant stated he shot the prosecuting witness because he wanted him to suffer, and that after the prosecuting witness was shot the defendant told him to shut his mouth or he would kill him and that he was "good willed to kill you now" does not negate an intent to kill at the time the shots were fired.

**2. Assault and Battery § 11— secret assault — indictment**

An indictment charging defendant with an assault in a secret manner "by waylaying and otherwise" sufficiently informs defendant of the charge against him.

**3. Assault and Battery § 15— instructions — felonious assault**

In a prosecution for felonious assault and secret assault, failure of the court to use the word "felonious" preceding the words "intent to kill" in the charge is not error, an intent to kill in itself being a felonious intent.

**4. Criminal Law § 112— instructions — reasonable doubt**

Where the trial judge correctly defined the term "reasonable doubt" and charged that a reasonable doubt could arise from a lack of evidence, failure of the judge to define reasonable doubt again each time he used that term in the charge is not error.

**5. Criminal Law §§ 158, 163— punctuation in transcribed charge to jury**

    The Court of Appeals is not bound by the punctuation employed by the court reporter in transcribing the charge; the words used by the judge are controlling.

**6. Criminal Law § 163— assignment of error to several parts of charge**

    Where a single assignment of error undertakes to present exceptions to several distinct parts of the charge and one of the parts excepted to is correct, the assignment of error will be overruled.

**7. Assault and Battery § 16— submission of lesser degrees of offense**

    In a prosecution for secret assault and felonious assault, failure of the court to submit the question of defendant's guilt of simple assault is not error where all of the evidence tended to show that the alleged assault was committed by a rifle fired at the prosecuting witness five or more times.

**8. Assault and Battery § 15; Criminal Law § 112— instructions on self-defense**

    In a prosecution for felonious assault and secret assault, portions of the charge excepted to are held not to have placed the burden of proof of self-defense upon the defendant when read in context with all of the instructions upon self-defense.

APPEAL by defendant from *McKinnon, J.,* 6 May 1968 Session, FRANKLIN Superior Court.

Defendant was charged in two bills of indictment: (1) with the felony of assault with a deadly weapon with intent to kill Howard Conyers, inflicting serious injuries not resulting in death; and (2) with the felony of a secret assault upon Howard Conyers with a deadly weapon with intent to kill. The two cases were consolidated for trial, and defendant entered pleas of not guilty.

The defendant Edward Louis Conyers and the prosecuting witness Howard Conyers are cousins and live on adjoining farmlands west of the town of Franklinton. A portion of the lands cultivated by the prosecuting witness are adjacent to defendant's property where his house and barns are situated.

The State offered evidence which tends to show that on 17 May 1967, the prosecuting witness Howard Conyers was operating a farm tractor and grain drill sowing grain in his field immediately west of defendant's home and tobacco barn; that he heard some popping noise and looked around to see what was wrong with his equipment; that he saw the defendant Edward Louis Conyers near the defendant's barn under a tree with his twenty-two rifle raised; that he heard a shot and felt a wound or injury to his left arm and

as. he was attempting to get off the tractor, he was shot in the leg and fell to the ground, where he was shot a third time. Thereafter he crawled behind the grain drill; that the defendant told the prosecuting witness he wanted to see him suffer, and later told him to shut his mouth or he would kill him; thereafter the prosecuting witness sent for help and before any help arrived the defendant returned to the edge of his property from where he had fired the shots at the prosecuting witness, but immediately returned to his back porch. That soon thereafter help arrived and the prosecuting witness was taken to a hospital where he remained for some time and was disabled for a further length of time with a cast on his arm and leg.

The State further offered evidence of the witness Robert Pender tending to show that he was present, and helping the prosecuting witness with his farming operations and observed the shooting of the prosecuting witness; that he observed the defendant coming from a barn and walking a short distance, and then firing several times at the prosecuting witness from a distance of 50 to 60 feet. The State's evidence tended to show that the defendant fired his rifle at the prosecuting witness five or more times.

The defendant offered evidence tending to show that on the occasion in question he was on his own property, that he was in and near the barn killing rats and looking for birds before the prosecuting witness started operating his tractor in the field near defendant's barn; that as the defendant started to leave his barn and go to his house, the prosecuting witness stopped his tractor at the edge of defendant's property line, jumped off the tractor with some object in his hand and began cursing and threatening defendant, saying he had beat defendant once and would do it again, and defendant said he believed he was going to assault him again. That defendant fired his rifle several times at the prosecuting witness to stop him. That the defendant was a man 58 years of age and the prosecuting witness was a younger man, being 39 years of age. Prosecuting witness had beaten the defendant on a prior date to the extent that he was knocked to the ground and his glasses were broken.

Upon the combination of the charges contained in the two bills of indictment the trial judge submitted the case to the jury under instructions that it might return any one of four possible verdicts: (1) guilty of secret assault, (2) guilty of a felonious assault, (3) guilty of assault with a deadly weapon, or (4) not guilty. The jury returned a verdict that defendant was guilty of secret assault. From judgment of confinement for a term of not less than four nor more than six years the defendant appealed.

*T. W. Bruton, Attorney General, by James F. Bullock, for the State.*

*Hill Yarborough, E. F. Yarborough, and Herbert H. Senter, for the defendant.*

BROCK, J.

[1]     The defendant assigns as error that the trial judge denied his motion for nonsuit at the close of the State's evidence, and renewed at the close of all the evidence. The State's evidence was sufficient to make out a *prima facie* case for consideration by the jury. Defendant's evidence was to some extent contradictory of the State's and tended to show that defendant acted in self-defense. Nevertheless, upon the whole evidence, the case was clearly one for jury determination. This assignment of error is overruled.

The defendant assigns as error that the trial judge denied his motion made at the close of the State's evidence, and again at the close of all the evidence, to nonsuit the felony charges. The defendant argues that the State's evidence negatived "intent to kill." We quote from defendant's brief his assertion of what the State's evidence shows in support of this argument:

> "The prosecuting witness Howard Conyers testified under direct examination that after being struck by shots fired by the defendant he asked the defendant 'why did he have to do that to me?' and the defendant replied in part that he wanted the prosecuting witness 'to suffer,' and later told the prosecuting witness that 'if you open your mouth I will kill you now,' and 'I am good-willed to kill you now.'"

It appears that defendant's version of the State's evidence does not carry the full impact of what was said and done at the time. The following appears in the transcript of the evidence just after the prosecuting witness had described the shooting.

> "A.   And when I tried to get behind something, another bullet came and went through my right leg and I crawled around behind the drill and got my body as well protected as I could and then I asked him why did he do this to me.
>
> "Q.   Asked who that?
>
> "A.   I asked Louis Conyers why did he have to do that to me?
>
> "Q.   What did he tell you?
>
> "A.   He said you have always tried to be a little better than

I was and said I want you to suffer, you yellow bellied s.o.b. (not abbreviated in the transcript), and I said, yes, if I had a rifle, I said, we would suffer together. He said, that is the difference, said, I have got the rifle and you haven't got anything and he said, what are you going to do about it? I said, nothing, I said the State of North Carolina will take care of you, and he said, well, look at that pain on your face. . . ."

After the prosecuting witness described sending his farm helper, Robert Pender, to his house for assistance, and that defendant went back to his (defendant's) house the following appears in the transcript:

"Q. Did Robert Pender go to your home?

"A. Yes sir.

"Q. All right.

"A. Well, Robert Pender came back to the field where I was.

"Q. All right. Was anyone else there where you were at the time Robert Pender came back?

"A. No.

"Q. Did anyone else come?

"A. Louis Conyers came back.

"Q. When?

"A. When I told Robert Pender to go back to the house and stay with my daddy and not to let him come down there.

"Q. How long after Robert Pender came back was it before Louis Conyers came back?

"A. Well, he was on his way back when Robert Pender left down there, left the field where I was, and he came back and told me, said I am good willed to kill you now, you s.o.b. (not abbreviated in transcript), and I said, I think you have done about enough, the best thing for you to do is get back up there somewhere and sit down, and that is when he turned around and went back.

"Q. Went back where?

"A. Louis Conyers went back and sit down up on his back step.

"Q. Is that the second time he had gone back to his house?

"A. Yes sir."

Although this testimony may have prompted defendant to argue no "intent to kill" to the jury, we do not agree that the State's evidence negatived the "intent to kill" element of the charges against defendant. This assignment of error is overruled.

[2]    The defendant assigns as error that the bill of indictment charges that defendant . . . in a secret manner did assault Howard Conyers by waylaying *and* otherwise . . . , and that the trial judge instructed the jury in the terms of the statute, i.e., . . . in a secret manner did assault Howard Conyers by waylaying *or* otherwise. . . . It appears that defendant contends that by reason of this he was not properly informed of the charges against him.

In *State v. Shade,* 115 N.C. 757, 20 S.E. 537, the indictment was as follows: The jurors, etc., present that Rachael Shade, etc., unlawfully, wilfully, maliciously, feloniously and in a secret manner, and with a certain deadly weapon, to wit, a pistol, in and upon the body of one Rose Wright did make an assault with the intent then and there to kill the said Rose Wright, her the said Rose Wright did beat, bruise and seriously injure, against the form of the statute, etc. The defendant moved in arrest of judgment for that the indictment did not charge the assault was committed by waylaying, and did not specify the secret manner in which it was committed. The Court said:

"The gravamen of the offense created by the statute (Laws 1887, ch. 32) is that the assault must be committed 'in a secret manner with intent to kill' the person assailed. The language which the defendant claims was not so followed in the indictment as to put him on notice of the precise nature of the offense with which he was charged, was 'by waylaying or otherwise.' We think that the charge is sufficiently 'plain, intelligible and explicit' (The Code, sec. 1183) to enable the defendant to prepare his defense and to warrant the court in proceeding to judgment in case of conviction. *S. v. Haddock,* 109 N.C. 873. The trend of judicial decision and the tendency of legislation is towards the practical view that objections founded upon mere matter of form should not be considered by the courts unless there is reason to believe that a defendant has been misled by the form of the charge, or was not apprised by its terms of the nature of the offense which he was held to answer. Where the defendant thinks that an indictment, otherwise objectionable in form, fails to impart information sufficiently specific as to the nature of the charge, he may before trial move the court to order that a bill of particulars be filed, and the court will not arrest the

judgment after verdict where he attempts to reserve his fire until he takes first the chance of acquittal. *S. v. Brady,* 107 N.C. 826. The statute denounces as criminal secret assaults with intent to kill, and after giving one explicit illustration, lest the maxim *expressio unius exclusio ulterius* might be invoked in its interpretation, the Legislature added the words 'or otherwise,' meaning thereby to include every other manner of making such secret attempts, no matter what might be the attendant circumstances. A court is not bound, in seeking to arrive at the intent of the Legislature, to adopt the printer's punctuation, and we think that the purpose in passing the act of 1887 was to include, in addition to those accompanied by waylaying, every other assault committed in a secret manner."

This assignment of error is overruled.

[3] The defendant assigns as error that the trial judge failed to use the words "felonious" preceding the words "intent to kill" in its charge to the jury. Apparently defendant contends that in a trial upon a charge of a felonious assault, or a secret assault, the trial judge must always instruct the jury in terms of a "felonious intent to kill" rather than an "intent to kill."

An intent to kill is in itself a felonious or murderous intent, and adding felonious to it is superfluous. We perceive no error in the charge in this respect. See *State v. McCaskill,* 270 N.C. 788, 154 S.E. 2d 907; *State v. Plemmons,* 230 N.C. 56, 52 S.E. 2d 10.

[4] The defendant assigns as error the failure of the trial judge to explain to the jury that a reasonable doubt of defendant's guilt might arise from a lack of or insufficiency of the evidence. It is not necessary for the trial judge to define the term "reasonable doubt," but when he undertakes to do so, he must do it correctly. Here the trial judge correctly defined reasonable doubt and pointed out that a reasonable doubt could arise from a lack of or insufficiency of the evidence. Defendant complains that the judge did not again define it each time he used the term "reasonable doubt" in the charge. This assignment of error is obviously without merit and is overruled.

[5] Defendant's next assignment of error (No. 14) is to a portion of the charge to the jury. We are not bound by the punctuation employed by the court reporter; the words used by the judge are controlling. If one comma is added to the paragraph complained of, defendant would clearly have no cause to complain. This assignment of error is overruled.

[6] Defendant's assignment of error No. 15 has eight exceptions

grouped thereunder. These exceptions present more than one question of law; they are taken to the court's instructions to the jury upon (1) presumption of innocence, (2) malice, (3) intent to kill, (4) serious injury, (5) self-defense, and (6) a contention of the defendant. An assignment of error, irrespective of the number of exceptions grouped thereunder, must present a single question of law for consideration on appeal. Where a single assignment of error undertakes to present exceptions to several distinct parts of the charge to the jury, and one of the parts excepted to is correct, the assignment of error will be overruled. *State v. Atkins*, 242 N.C. 294, 87 S.E. 2d 507. This assignment of error is overruled.

[7]    The defendant next assigns as error that the trial judge did not submit the case to the jury upon an instruction that a possible verdict was one of simple assault, which would have made five possible verdicts instead of the four submitted by the Court. This assignment of error is without merit. There is no evidence, including defendant's, which would support a verdict of guilty of simple assault. All of the evidence tended to show that the alleged assault was committed with a 22 caliber rifle fired at the prosecuting witness five or more times. *State v. Johnson*, 1 N.C. App. 15, 159 S.E. 2d 249, *State v. LeGrande*, 1 N.C. App. 25, 159 S.E. 2d 265.

[8]    Defendant next assigns as error portions of the charge as it related to defendant's assertion that he acted in self-defense. Defendant contends that the charge placed the burden of proof of self-defense upon the defendant, and that this is error in a non-homicide case.

The portions of the charge excepted to are not objectionable when read in context with all of the instructions upon the law of self-defense. The able trial judge carefully explained to the jury that the entire burden of proof was upon the State and that the defendant had no burden of proof. We have carefully read the entire charge and hold that it fairly presented the case to the jury under appropriate principles of law. This assignment of error is overruled.

The remaining assignments of error are formal and require no discussion in the light of what has heretofore been said.

We hold that the defendant has had a fair trial, free from prejudicial error.

No error.

BRITT and PARKER, JJ., concur.